### SCARRATT *et al. v.* COOK BREWING COMPANY.

1. An action against a principal and his surety on a bond conditioned to guarantee the payment of a running account due by the principal to the obligee of the bond, wherein it is alleged that the principal is due the plaintiff an amount largely in excess of that named in the obligation sued on, but judgment is prayed only for the amount of the bond with interest from the date of its breach, is not subject to demurrer on the ground of misjoinder of parties and of causes of action.

2. In defense to such an action it is permissible to plead and prove anything which legally goes to show that the principal does not owe the account to guarantee which the bond was given, and it is error to exclude evidence to that effect, offered under proper pleadings.

3. The surety on such a bond may plead and prove, in defense to an action thereon, that, by reason of the failure of the obligee to comply with his agreements with the principal, his risk as surety was increased and he was prevented from protecting himself from liability on the bond.

Argued January 14, — Decided February 11, 1903.

Complaint.    Before Judge Calhoun.    City court of Atlanta. February 1, 1902.

*W. H. Terrell, Black & Jackson, J. C. Smith,* and *H. C. Peeples,* for plaintiffs in error.    *Walter R. Brown,* contra.

CANDLER, J.    The F. W. Cook Brewing Company, an Indiana corporation, brought suit against Scarratt as principal, and Karwisch as security, both of Fulton county, upon a bond in the sum of $2,000, the conditions of which were, " that whereas the said F. W. Cook Brewing Company has made arrangements with the said John B. Scarratt to sell their beer: now if the said Scarratt shall well and truly pay to the said F. W. Cook Brewing Company for all beer it may sell him and save the said F. W. Cook Brewing Company harmless on account of any dealings it may have with him in relation to said beer business, then this obligation to be void; otherwise to remain in full force and virtue."    The petition alleged that after the delivery of the bond, the brewing company had sold to Scarratt, between the dates of August 22, 1896, and December 31, 1899, beer to an amount of something more than thirty thousand dollars, upon which they had received payments at various times, but that Scarratt, at the time of bringing this suit, owed the company a balance on his account for beer of $4,220.61; that he failed and refused to pay this balance, although demand had been made upon him; that after Scarratt's refusal to pay, demand had been made upon Karwisch, as security, for the maximum amount fixed by the bond, but that he also had refused to pay.    The petition concludes as follows: " This suit is brought to recover said sum of two thousand dollars, together with interest thereon from date of breach.    Of both said defendants demand has been made, and refusal by both of them to make good their said bond."    Attached to the petition as an exhibit was what purported to be a copy of the account due by Scarratt to the brewing company, setting forth numerous charges and credits, and showing a balance due as alleged in the petition.    Scarratt and Karwisch filed separate answers. Karwisch demurred on the grounds, (1) that the petition set forth no cause of action; (2) that there was a misjoinder of parties, the plaintiff having no right to join the security in the same action with his principal; and (3) that the plaintiff declared in an action of debt, whereas Karwisch, if liable at all, was liable only for damages

on a penal bond. The court overruled this demurrer, and Karwisch excepted pendente lite. On the trial the jury returned a verdict for the plaintiff for $2,000 principal, $248.42 interest, and costs. The defendants made a motion for a new trial, which was overruled, upon which ruling, as well as upon the overruling of Karwisch's demurrer, the bill of exceptions to this court assigns error.

1. We think the court below very properly overruled the demurrer to the petition. A cause of action against both the principal and the security on the bond was clearly set forth. It was a suit to recover damages against both Scarratt and Karwisch to the maximum amount stated in the bond, for which they agreed to be answerable in the event that Scarratt did not pay the brewing company for beer sold him under an arrangement made between them previously to the signing of the bond. Under this bond Scarratt bound himself to pay to the brewing company damages to the amount of $2,000 if he failed to pay for any beer sold him by the plaintiff, and Karwisch signed the bond as his security. The account against Scarratt was set out only for the purpose of showing the amount of the damages sustained by the plaintiff by the breach of the bond. Nor was there any misjoinder of parties. In one instrument Scarratt and Karwisch each acknowledged himself bound to the plaintiff company in the event Scarratt should fail to pay for the beer sold to him. This case is not analagous to that of *Mayor & Council of Brunswick* v. *Harvey*, 114 *Ga.* 733, cited by counsel for the plaintiff in error; for in that case Harvey only joined in the bond and entered into an obligation to save the security company harmless, and he made no promise to or covenant with the city. The security company entered into a contract with the City of Brunswick, which was in the nature of a policy of fidelity insurance, insuring the city against the fraud or dishonesty of Harvey. The city paid the premiums on the policy; and while Harvey did sign it, his only obligation was to save the insurance company harmless. The company alone was bound to the city by that contract.

2. As before stated, the defendants filed separate pleas, in which they denied liability on the bond, and Karwisch subsequently offered an amendment to his answer, which the court allowed. To Karwisch's plea as amended the plaintiff demurred both generally,

and specially, but this demurrer was overruled. No exception is taken to the overruling of this demurrer, and hence we do not pass upon the question thereby raised. In considering the various points made by the motion for a new trial, however, it will be necessary to deal with several matters involved in these demurrers. It is clear that it was necessary, in order for the plaintiff to recover, that it should appear that Scarratt was indebted to it for beer sold to him under the arrangement between the parties referred to in the bond, and a recovery could only be had for such amount, not exceeding $2,000, as the brewing company could show that Scarratt was due it for beer for which he had failed to pay. "All judgments entered against the obligors of any bond, whether official or voluntary, shall be for the amount of damnification found by the verdict of the jury, and not for the penalty thereof." Civil Code, § 5345. "Penalties in bonds are not liquidated damages, and even if called such, yet, if it appears unreasonable and not so actually intended by the parties, the law will give only the actual damages; and in all cases where the damage is capable of computation, and is not uncertain in its character, such stipulations will be declared to be penalties." Civil Code, § 3795. In this case it was clearly the intention of the parties that the liability on the bond should be only for such damages as would accrue to the plaintiff in the event Scarratt failed to pay for the beer sold him. Any defense, therefore, that Scarratt could make against an action on the account set up by the brewing company could be made both by him and his security in an action on the bond, and this would include any set-off or equitable demand by which he could show that he was not indebted to the plaintiff as alleged in its petition. *Bishop* v. *Matthews*, 109 *Ga.* 790. The defendant had a right to set up and prove any damages suffered by him on account of the failure of the plaintiff to comply with the agreement under which the beer was sold and in view of which the bond was given. The object of the bond was to secure Scarratt's compliance with that agreement. Certainly, then, the defendants had a right to plead and prove as a defense that the plaintiff had failed to carry out its obligations thereunder, by which either of the defendants was damaged. Scarratt in his plea proposed to recoup against the plaintiff an aggregate amount of $940 in excess of what he admitted he was due it for beer. The ruling out, therefore, by the court of any legal evidence

which went to sustain that plea would be reversible error. It was accordingly erroneous for the court below to refuse to allow Scarratt to testify, in support of his plea, that the bottled beer furnished him by the plaintiff and placed on sale with various parties was not salable, and that he (Scarratt) made complaints to the plaintiff and called its attention to the complaints made to him by his customers who had undertaken to sell the beer. It was also error to refuse to allow Scarratt to testify to the amount of money and the value of the time he claimed to have lost in building up a business in bottled beer, by reason of the failure of the plaintiff to comply with its agreement to furnish him with such bottled beer. It is true that the plea did not set out these items of damage with desirable exactness, but it was not attacked by demurrer, and there was enough in it to put the plaintiff on notice of what the defendants expected to prove. The fact that the witness could not tell with accuracy the amounts about which he was questioned went only to the weight and effect of the evidence, and in no wise affected its admissibility.

The defendant Karwisch, at the trial, filed an amendment to his answer, in which he set up that under the agreement made between Scarratt and the brewing company, reference to which was had in the bond, Scarratt was to be furnished beer at $6 per barrel; that the plaintiff was to furnish Scarratt with cold storage in Atlanta, and was to send an agent to Atlanta every month for the purpose of aiding Scarratt in the advertisement and sale of its beer, and of keeping an oversight on the business for Karwisch's protection. He further averred, that, as a condition precedent to his signing the bond as security, the plaintiff agreed to keep him informed as to the condition of Scarratt's account with it, and to give him due advice whenever Scarratt should fail to meet any obligation to it. He set up that not only did the plaintiff fail to give him this information, but that, upon his making inquiries of the plaintiff, its general agent wilfully, designedly, and fraudulently deceived him, and represented to him that Scarratt's account was all right, that he was keeping up, etc. He averred; that, had he not been so misled and deceived, he could have fully protected himself, and that by the failure of the plaintiff to keep him informed as to the true state of the account, and by its fraudulent misrepresentations to him, his risk had been increased, and

as a consequence he was relieved from liability on the bond.   As already stated, this plea was demurred to by the plaintiff on various grounds, all of which the court overruled.   This statement of fact is deemed necessary in view of the next ground of the motion which we are to consider, which is in the following language: " Because the court refused to allow Karwisch, security, while on the stand as a witness for defendants, to testify as follows: ' When the bond was produced for me to sign, I said: " Now, Mr. Puder [Puder was the general agent of the brewing company, and represented it throughout the entire transaction], Scarratt is present here, and if I sign this bond, I want to notify you right now, if Scarratt ever gets behind, if he gets behind anything, you are to let me know." Puder replied, "You know I will do that." If I had not had this positive promise of Puder, I would not have signed the bond.   Before I signed the bond, also, it was agreed by Puder that he would come and go around with Scarratt and help what we call drum up customers, and make the beer popular; that he would come here once a month and exercise an oversight over the business, for my benefit as well as for the benefit of the business.' " The court ruled out this evidence on the ground that its purpose was to vary the terms of a written contract by parol evidence.   That part of the evidence relating to Puder's promise to keep Karwisch informed as to the condition of Scarratt's account was perhaps subject to that objection; but the latter part of the evidence quoted was clearly admissible.   Karwisch's contract was simply to see that Scarratt paid the brewing company what he owed it, and, under the pleadings, any evidence would be admissible in favor of Karwisch which would go to show that, by reason of the wrongful acts of the brewing company, Scarratt owed it nothing, or that, through the failure of the plaintiff to perform its obligation to Scarratt to exercise an oversight over the business, the risk incurred by the contract of suretyship was increased.

This bond was only an instrument given to secure compliance on Scarratt's part with an agreement entered into between him and the brewing company, by the terms of which he was to have exclusive control in the city of Atlanta of the plaintiff's beer, for which he was to pay.   Karwisch agreed to secure his compliance with the agreement to pay for the beer, to an amount not exceeding $2,000.   In consideration of the agreement between the parties,

the brewing company, according to the plea of the defendants, agreed to certain things, and it was upon the failure of the company to comply with its part of the agreement that the defendants relied in their defense to the action on the bond. The bond was a contract covering only one part of the agreement; a very vital part to the plaintiff, it is true, but at best but one part. It referred to and, clearly recognized this anterior agreement, and any failure on the part of the plaintiff to perform any of its obligations under the agreement, by which either Scarratt or Karwisch was damaged, could be pleaded by either as a defense to the action on the bond. Either of these defendants had a right to show that Scarratt did not owe the money alleged to be due by him to the brewing company, and Karwisch in addition could prove anything that would tend to show that he did not owe the debt for which he was sued, because of the increase of his risk by acts of the plaintiff. If the plaintiff wilfully deceived Karwisch as to Scarratt's indebtedness to it—misled him, lulled him into a feeling of security and a condition of repose, and if thereby his risk was increased, he was entitled to show it; and if he could satisfy the jury of the truth of his averment, he was certainly entitled to do so. The court erred in ruling out this testimony, and also in his charge to the jury as set out in the eighth ground of the amendment to the motion for a new trial. It follows, of course, that the case must be tried over, in the light of what is here laid down.

We do not undertake to pass upon the question whether the verdict was supported by the evidence. Upon the next trial the various contentions of the parties will be decided by another jury, who will say what the truth of the case is. If Scarratt is indebted to the brewing company under the agreement between the parties, the plaintiff will be entitled to a verdict against him in this suit to the amount of that indebtedness up to $2,000. If, on the other hand, he can show that by reason of the failure of the plaintiff to comply with the terms of the agreement by which it was bound, he is not indebted to it in any sum, there can be no recovery against either him or Karwisch. Again, the jury may find that Scarratt is indebted to the brewing company, but that on account of its failure to carry out its obligation to exercise an oversight over the business, the risk assumed by Karwisch was increased after the bond was signed, or that owing to its fraudulent misrepresentations to

him as to the condition of Scarratt's account, he was prevented from protecting himself from loss by reason of his suretyship. In that event Scarratt would be liable for the amount found by the jury to be due by him, while Karwisch would be relieved from liability.          *Judgment reversed.     By five Justices.*