15433.   STRICKLAND *v.* COLEMAN, adm'r.

Where the surety on a note was informed by the payee and holder that it had been settled in a trade between himself and the maker, discharge of the surety resulted; and especially does such conduct discharge the surety where the maker was solvent when such information was given the surety, but insolvent at the time of the trial of the suit upon the note.

DECIDED MAY 14, 1924.

Complaint; from city court of Reidsville—Judge Cowart. January 18, 1924.

*H. H. Elders, J. Saxton Daniel,* for plaintiff in error.

*E. C. Collins, R. W. Barnes,* contra.

BROYLES, C. J.   W. A. Coleman, administrator of the estate of Eli Coleman, sued W. S. Sikes, as maker, and Dr. L. V. Strickland, as surety, upon a promissory note payable to W. A. Coleman, administrator of the estate of Eli Coleman. The maker filed no defense. The surety answered, admitting the execution of the note, but denied liability, and pleaded that he had been

discharged because of certain acts on the part of the creditor which increased the risk incurred by his contract of suretyship. Upon the trial of the case the plaintiff introduced in evidence the note sued upon, together with a copy of a notice to collect attorney's fees, and then rested. The evidence adduced in behalf of the defendant showed: that he gave W. A. Coleman, the payee named in the note, written notice to proceed to collect the debt out of Sikes, the principal; that about the time the note became due Coleman went to see Sikes and told Sikes that he had a written notice from Strickland, the surety, to sue upon the note, and wanted to know what to do about it, and Sikes proposed to sell to Coleman a mule for $235, but later agreed to take $225 for the mule and let Coleman take out of this sum the amount of the note and pay the difference in money; that when the principal and the payee of the note were closing the trade, Strickland, the surety, approached them and Coleman said to him: "Me and Stout [Sikes] have traded on a mule and settled this note that you are indorser on;" that at the time of this conversation Sikes was in possession of and the owner of the mule in question, and that the agreed value of $225 was an amount more than enough to pay the note, and that at the time of the trial Sikes was insolvent. The defendant testified, among other things: "My reason for not doing anything further towards having Coleman press the principal on the note was because I thought it was settled. I thought the trade was made. I understood, after the conversation, that my connection with it [the note] had ended."

In our opinion the above facts, which were uncontradicted, demanded a finding that the defendant's risk, incurred by the contract of suretyship, was increased, and, under the provisions of section 3544 of the Civil Code (1910), "any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, will discharge him." The conduct of Coleman, the payee, in notifying Strickland, the surety, that he and Sikes, the principal, had "traded on a mule and settled this note that you are endorser on," was sufficient to work a discharge of Strickland under the statute. In *Whitaker* v. *Kirby,* 54 *Ga.* 278, 280, Judge McCay said: "This court, in *Toomer* v. *Dickerson,* 37 *Georgia,* 428, held that the failure of the mortgagee to put upon record a mortgage given to secure

the debt by the principal, discharged the security, though it did not affirmatively appear that the security was injured; under such failure he was liable to have been injured, his risk was increased. This is a much stronger case. Here the security was allowed . . to rest under the belief, produced by the plaintiff's own declaration, that the note was paid off. Under the law, the security had a right to notify the plaintiff to sue, and on failure to sue in six months, this would discharge .him. He had, besides, a right at any time to pay the debt and himself collect the money. He had a right to get additional security for his own protection. Who shall say what he would have done if he had known the truth? And all of these rights he has, in effect, been deprived of, by the information given him by the plaintiff. He had no call to use any of these rights, because the plaintiff had told him the note was paid. It is no reply to this to say that if the principal is still solvent the security is not hurt. It does not appear that the principal is solvent. . . This act of the plaintiff was, in our judgment, a serious wrong, 'injury' to the defendant. He thus lulled him to sleep; in fact, deprived him of several ways by which he might have secured himself." See, also, *Bullard* v. *Ledbetter, 59 Ga.* 109; *High* v. *Cox, 55 Ga.* 663; *Matthews* v. *Everett, 84 Ga.* 476 (10 S. E. 1088); and *Scarratt* v. *Cook Brewing Co., 117 Ga.* 181, 187 (43 S. E. 413).

It follows from what has been said that the verdict in favor of the plaintiff was contrary to law and the evidence, and therefore that the court erred in overruling the defendant's motion for a new trial.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*