MAYOR & COUNCIL OF BRUNSWICK *v.* HARVEY *et al.*　|114 733| |d117 183|

1. Where a fidelity and guaranty company enters into a bond with the authorities of a municipal corporation to guarantee the city against the fraud and dishonesty of the city treasurer, the obligation thus given is not a statutory but a voluntary bond. To it, for this reason if for no other, section 263 of the Political Code is not applicable.

2. Where in such bond the treasurer joins merely to enter into an obligation to save the company harmless, and makes no promise or covenant to the city, the company and the treasurer are not jointly liable on such bond.

3. Where a suit is brought upon such bond and the allegations of the petition clearly show that the action is predicated upon the original bond only, an amendment seeking to recover upon two other bonds, given subsequently for a like amount and purpose and adopting by reference the terms of the original bond, was not allowable, although the petition alleged that the bond sued on had been renewed from time to time. The renewals being separate and distinct contracts, the amendment sought to add a new and distinct cause of action.

4. Where in such bond it was stipulated that the liability of the company should be limited to such losses as should occur during the continuance of the bond or any renewal thereof and be " discovered during said continuance or within six months thereafter or within six months from the death or dismissal or retirement " of the treasurer from the service of the city, and that upon the issuance by the company of any subsequent bond guaranteeing the fidelity of the treasurer the liability under the original bond should cease and determine, so that no two bonds should be operative at the same time, the company is not liable under the original bond for any loss not discovered until more than six months after the expiration of such bond, although such loss was discovered within six months from the dismissal of the employee and during the continuance of one of the subsequent bonds.

Argued January 13,— Decided February 6, 1902.

Action on bond. Before Judge Bishop. City court of Brunswick. July 24, 1901.

*F. E. Twitty* and *W. E. Kay,* for plaintiff.
*Crovatt & Whitfield,* for defendants.

SIMMONS, C. J.   The Mayor and Council of the City of Brunswick brought suit against Harvey and the United States Fidelity and Guaranty Company.   From the allegations of the petition the following facts appear:   In January, 1898, Harvey was elected city treasurer by the mayor and aldermen of Brunswick.   The charter of that city required that the treasurer give bond, with security, for the faithful performance of his duties.   On January 24, 1898, a bond was accepted by the mayor and council from the Fidelity and Guaranty Company.  ˙ This bond was in the sum of $15,000, and guaranteed the city against the fraud and dishonesty of Harvey as treasurer.   The bond was signed by Harvey and by the president and the secretary of the company, and sealed with the seal of the company.   It contained no promise or covenant by Harvey to the municipality.   The only promise or covenant on his part was that he would save the company harmless from loss on the bond.   The bond contained many stipulations and conditions limiting the liability of the company.   Some of these will be mentioned in the opinion below.   The bond was to be of force from February 1, 1898, to February 1, 1899.   In August, 1900, the city authorities discovered that Harvey was a defaulter.   On September 15, thereafter, in compliance with one of the conditions of the bond, notice of the defalcation was given the company.   The company sent an agent to the city of Brunswick, who made an investigation of Harvey's accounts.   The company thereupon refused to pay anything on the bond.   Suit was brought by the city against Harvey and the company for $15,000, the amount of the bond.   To this action Harvey and the company severally demurred.   The only grounds of Harvey's demurrer necessary to mention here urged that there was a misjoinder of parties, and that the petition did not set forth a cause of action; he claiming that the city had no right to recover against him on the bond, because in it he had made no promise or covenant whatever to the city authorities.   Harvey also filed a plea in abatement, which, under the view we take of the case, it is unnecessary to set out here.   The company demurred on several grounds.   One of these was that there was no cause of action set out against it, because it appeared from the petition and the bond attached thereto that the liability of the company on the bond had ceased and determined on account of the failure of the city authorities to discover the defalcation of Harvey, and to give notice thereof

within six months after the expiration of the bond. The plaintiff offered several amendments to the petition, most of them being of a formal nature to meet special demurrers. The principal amendment was to the effect that the company had twice renewed the original bond, and was liable on these renewals for $15,000 each, in addition to an amount claimed on the original bond. This amendment alleged that Harvey had defaulted for an amount much larger than that set out in the original petition. It was claimed that this amendment was allowable, for the reason that the original petition had alleged that the company had given the bond then sued on and such bond had been continued from time to time and renewed from year to year. This amendment was objected to by the company on the ground that it sought to introduce a new and distinct cause of action. The demurrers of Harvey and the company were sustained by the trial judge, who refused to allow the amendment and dismissed the petition. The plaintiffs sued out a bill of exceptions, assigning error on each of the rulings of the trial judge.

1. It was claimed here, in the argument of the learned counsel for the plaintiff in error, that although the bond given by the defendants was defective and did not contain the provisions required by the statute, still under the Political Code, § 256, it was a statutory bond, and under the Political Code, § 263, the court would "read into it" all the conditions prescribed for statutory bonds. We have carefully examined the bond and the authorities relied upon by counsel, and after such examination we can not concur with counsel in this contention. The charter of Brunswick (Acts 1889, p. 1041, § 39) requires that the treasurer of the city give bond and security for the faithful performance of his duties. In order to comply with this requirement, the officer himself should be one of the obligors in the bond. Instead of giving the bond required by the charter, Harvey gave one signed by the fidelity and guaranty company, which was in the nature of a policy of fidelity insurance, insuring the city against his fraud and dishonesty. While his name was signed to this bond, he, as before recited, made no promise or covenant to the city, but merely undertook to save the company harmless. A careful examination of the bond will show that it is not in the nature of a statutory bond at all, but is in its nature a policy of fidelity insurance. The company agreed with the city to pay any loss the latter might sustain

by reason of Harvey's fraud or dishonesty, and the obligation is hedged about with many conditions and limitations. Not being a statutory bond, this obligation must be dealt with as a common-law bond. Being a bond of this nature, it makes the company liable under its provisions only, and the above-cited section of the code can not possibly be applied to such a bond, even if it can ever be applied to the bonds of officers of municipal corporations. See *Alexander* v. *Ison*, 107 *Ga.* 745. There is nothing in the act of 1896 (Acts 1896, p. 58, Van Epps' Code Supp. § 6620 et seq.) to require that this bond should be treated as a statutory one.

2. The above being true of the bond and the obligations therein, it follows that there was no cause of action set out against Harvey, and that uniting him with the company in a suit upon the bond was a misjoinder of parties. Guarantee Co. of North Am. *v.* Mechanics etc. Co., 80 Fed. 766.

3. The intention of the pleader when he drew the original petition was manifestly to sue upon the original bond alone. A careful reading of the petition will demonstrate this. While the petition alleged that the defalcation amounted to more than $21,000, the prayer for judgment against the defendants was for but $15,000 (the amount of the original bond), and the petition refers to the liability of the company as $15,000. It did aver that the company had "renewed the said bond from year to year and continued the same in force without intermission . . to and through the year ending February 1, 1901," but the context shows that the pleader regarded the renewals as merely continuations or extensions of the bond first given, and not as new and separate contracts or obligations. New counsel put in control of the case seem to have differed with counsel who filed the petition. They offered the amendment whereby it was sought to include the renewals as separate and independent contracts, and to recover $15,000 upon each of the renewals as well as the sum of $13,000 on the original bond, the loss being stated at more than $54,000. This amendment was offered as amplifying the allegation that the bond had been continued from time to time and renewed from year to year. We think we have shown that the intention of the pleader was to sue on the first bond only, treating the renewals as simply extensions of that bond. We think, therefore, that the amendment was properly disallowed. If the original suit had been for $45,000, and by mistake

or accident the renewals had not been specifically declared on but only mentioned in this general way, perhaps the original petition could have been amended by setting out the renewals and declaring on them. Inasmuch, however, as the only sum sued for was $15,000, and the petition shows that the suit was based upon the original bond only, the allowance of the amendment offered would have been to add new and distinct causes of action; which is contrary to the laws of pleading and practice in this State and to the Civil Code, § 5099. The original bond was terminated by the subsequent renewals, and the latter were in fact new and distinct contracts which adopted by reference all the terms and conditions of the first. That such renewals of bonds or contracts of this nature are new and distinct contracts there can be no question. All the authorities which we have examined upon this subject so treat them. See De Jernette v. Fidelity & Casualty Co., 25 Ins. L. J. 315, which is a decision made by the Court of Appeals of Kentucky in a case very similar to the present one. Certainly this is true of ordinary policies of insurance. 1 May, Ins. (4th ed.) § 70a; Ostrander, Ins. (2d ed.) 344; 2 Richards, Ins. (2d ed.) § 156; 4 Joyce, Ins. 3485. The renewals, being separate and distinct contracts and not declared on in the original petition (which contained no hint or intimation that they were intended to be declared on), could not be added by way of amendment. There was therefore no error in sustaining the objections to the amendment.

4. Having shown that the renewals could not be added by way of amendment, the next question which arises is as to whether the company is liable upon the original bond. That bond contained numerous conditions and limitations. It limited the term for which it should continue to the year intervening between February 1, 1898, and February 1, 1899. It expressly limited the liability of the company to such losses as should occur " during the continuance of this bond, or any renewal thereof, and discovered during said continuance or within six months thereafter or within six months from the death or dismissal or retirement of the employee from the service of the said employer." It further provided that any claim should be sent to the president of the company "immediately after the discovery of any loss for which the company is responsible hereunder, and within six months after the expiration or cancellation of this bond as aforesaid;" and that "the company upon the

47

execution of this bond shall not hereafter be responsible to the employer under any bond previously issued to the employer on behalf of said employee, and upon the issuance of any bond subsequent hereto upon said employee in favor of said employer, all responsibility hereunder shall cease and determine, it being mutually understood that it is the intention of this provision that but one (the last) bond shall be in force at any one time unless otherwise stipulated between the employer and the company." Under these conditions and limitations it is clear that the city authorities can not recover under the original bond. It expired by its own limitation at noon on February 1, 1899. According to the allegations of the petition, the defalcation or fraud of the city treasurer was not discovered until some time in August, 1900. Under our construction of the conditions of the bond, the city authorities had the whole of the year from February 1, 1898, to February 1, 1899, within which to discover any loss for which the company might be liable; and they were also by the contract given the next ensuing six months to discover any loss which had occurred during that year and to inform the company of the discovery. The loss, as matter of fact, was not discovered until August 21, 1900, after much more than six months had elapsed from the expiration of the original bond. For this reason the company is not liable to the city on that bond. It was said that such a ruling would entail a great hardship on the city; that it paid all the premiums required by the company; that the city treasurer had defaulted for a large amount; and that it would be a great hardship if no recovery could be had upon the bond which he had given. This may be true; but still, if cities or towns take bonds such as this (as they are allowed to do under the act of 1896, Van Epps' Code Supp. § 6620 et seq.), with so many stipulations and conditions in behalf of the company, they must keep close watch over their officers and their accounts so as to be able to comply with the conditions of the security which they have accepted. The municipal authorities doubtless read these conditions, stipulations, and limitations; they accepted the bond containing them; and the company gave ample time for the discovery of the fraud or dishonesty of the treasurer,—twelve months from the execution of the bond to its expiration and six months thereafter. If a city accepts such a bond, it is as much bound by the contract as is the company; and if it fails to comply with the terms

of the contract, it can not recover, however great the loss it may sustain.　It is the duty of courts to construe contracts as they are made, however hardly the construction may bear upon one of the parties.　For construction of conditions similar to those above dealt with, see Guarantee Co. of No. Am. *v.* Mechanics etc. Co., 80 Fed. 766; Lombard Ins. Co. *v.* Surety Co., 65 Fed. 476; Am. Surety Co. *v.* Pauly, 170 U. S. 134, 148; De Jernette *v.* Fidelity & Casualty Co. 25 Ins. L. J. 315.

*Judgment affirmed.　All the Justices concurring.*