### PROCTOR COAL CO. v. UNITED STATES FIDELITY & GUARANTY CO.

(Circuit Court, N. D. Georgia. July 11, 1903.)

1. INSURANCE—FIDELITY BONDS—SIGNATURE BY EMPLOYÉ—ESTOPPEL.

Where a fidelity insurance company received premiums for two renewals of a bond, with knowledge that the bond was not signed by the employé whose fidelity was insured, as required by the bond, it was estopped to set up the absence of such signature to prevent a recovery on the bond.

2. SAME—BONDS—RENEWALS—CONSTRUCTION.

A fidelity bond bound the guarantor to make good and reimburse to the employer any pecuniary loss sustained, occurring during the continuance

¶ 1. Fidelity insurance, see note to American Credit Indemnity Co. v. Wood, 19 C. C. A. 273.

of the bond, or any renewal thereof, and discovered during such continuance or within six months thereafter. Another provision declared that on the issuance of a subsequent bond, or renewal, responsibility on any other bond should cease; it being the intention that only the last bond should be in force at any one time. The bond was subsequently renewed, the first renewal providing that, in consideration of the sum of $25, the guarantor guarantied the fidelity of the employé from December 1, 1899, to December 1, 1900, subject to the conditions of the previous bond; and the second renewal recited that, in consideration of a similar sum, the guarantor "continued in force" bond numbered, etc., in the sum of $5,000. *Held*, that such renewals did not operate as a continuing contract, but that each renewal was a separate and distinct obligation, and that an action could only be maintained for losses sustained and discovered at any time after December 1, 1900, and during the continuance of the last renewal.

**3. SAME.**

A fidelity bond provided that the guarantors should not be responsible to the employer under any bond previously issued on behalf of the employé, and that on the issuance of any subsequent bond all responsibility under the bond in question should cease; it being understood that it was the intention of the provision that but one (the last) bond should be in force at any one time unless otherwise stipulated. *Held*, that such provision should be construed merely to prevent a double responsibility of the guarantor, and did not affect the employer's rights under another provision, authorizing a recovery for any defalcation discovered within six months after the termination of the bond.

Dorsey, Brewster & Howell and Templeton & Carlock, for plaintiff. Smith, Hammond & Smith, for defendant.

NEWMAN, District Judge. This is a suit by the plaintiff against the defendant on a fidelity insurance bond. The original declaration was demurred to, when amendments were filed by the plaintiff, to which amendments demurrers have also been filed. On December 1, 1898, the defendant company entered into a contract with the plaintiff company, by which it insured the plaintiff against loss by reason of any act of fraud or dishonesty on the part of one C. H. Stanton. The Proctor Coal Company had its office at Knoxville, Tenn., and Stanton had charge of its business at Atlanta, Ga. The bond was in the sum of $5,000. The bond was renewed from December 1, 1899, until December 1, 1900, and again from December 1, 1900, to December 1, 1901. On August 8, 1901, the plaintiff discovered a shortage in the accounts of C. H. Stanton, the total of which, by subsequent examination, proved to be $6,585.82. On August 29, 1901, the plaintiff furnished to the defendant company in the city of Baltimore an affidavit setting forth a detailed list of the shortage, which up to that time had been found to amount to $5,099.20. Suit was filed in the office of the clerk of the city court of Atlanta on February 11, 1902, and the cause was removed to this court on March 1, 1902.

Several interesting questions are presented by the demurrers, the first being as to the effect of the failure (which is conceded) of Stanton, the employé, to sign the bond. A provision of the bond is as follows:

"That it is essential to the validity of this bond that the employé's signature be hereunto subscribed and witnessed."

And immediately following is this:

"That no one of the above conditions or the provisions contained in this bond shall be deemed to have been waived by or on behalf of said company

unless the waiver be clearly expressed in writing, over the signature of its president and secretary, and its seal thereto affixed."

After this follows a provision which it is claimed by the defendant shows that the signature of the employé is of real importance, and not a mere formality, as follows:

"That the said employé doth hereby, for himself, his heirs, executors, and administrators, covenant and agrees to and with the said company that he will save, defend, and keep harmless the said company from and against all loss and damage of whatever nature and kind, and from all legal and other costs and expense, direct or incidental, which the said company shall or may at any time sustain or be put to (whether before or after any legal proceedings by or against it to recover under this bond, and without notice to him thereof), or for or by reason or in consequence of the said company having entered into the present bond."

And then follows this language:

"In witness whereof the said C. H. Stanton (the said employé) hath hereunto set his hand and seal, and the said company has caused this bond to be sealed with its corporate seal, attested by its president and its secretary, this 30th day of December, one thousand eight hundred and ninety-eight."

As this bond has never been signed by Stanton, and considering these very stringent provisions, it seems exceedingly doubtful if there could be a recovery, if this suit was on the original bond alone; but, for reasons which will be hereinafter stated, I treat this as a suit on the original bond and the renewals.

The plaintiff had filed an amendment to the declaration in this case in which it makes this allegation:

"Petitioner avers that, with the knowledge that said bond did not have thereto the signature of said Stanton, said defendant received from petitioner not only the first premium thereon, but has received from petitioner two other premiums, one for the year beginning December 1, 1899, and ending December 1, 1900, the other ending December 1, 1901, leading petitioner to believe it was secure against loss by reason of the fraud and dishonesty of said Stanton, and accepting petitioner's money for said insurance; therefore it would be a fraud if said defendant now insisted it was not bound because said Stanton had not signed said bond."

And this further allegation:

"Petitioner further avers if the signature of said Stanton is necessary to said bond in order to protect the defendant, and to enable it to hold said Stanton bound to it for any money it may be required to pay petitioner by reason of any fraudulent and dishonest act of said Stanton occasioning loss to petitioner, petitioner avers said Stanton has at all times recognized said bond, and by many acts and letters with and to petitioner recognized the existence of said bond, and had notified petitioner of its approaching termination, and the necessity of the payment of accruing premiums, and at other times sought to have it reduced in amount, etc., whereby he is estopped from denying any obligation which the giving of said bond would impose on him or his estate."

And the further allegation:

"That said bond was given, not only upon the application of petitioner, but on the solicitation of said Stanton, and the obligations defendant assumed for any fraudulent and dishonest act of said Stanton was by his consent and at his instance."

It might be that, the bond having been sent from the defendant's office in Baltimore to the Proctor Coal Company at Knoxville, the

defendant company could accept that premium, supposing that Stanton's signature would be obtained, as has been urged by counsel here; but if, as alleged in the amendment to the declaration, the defendant received premiums for the two renewals, "with the knowledge that said bond did not have thereto the signature of said Stanton," then the defendant cannot set up the absence of Stanton's signature to prevent a recovery upon the bond, if the plaintiff be otherwise entitled to recover.

The next question presented is as to the effect of the renewal of an obligation of suretyship such as this, insuring an employer against the dishonesty of an employé. It is contended by the plaintiff in this case that the effect of this original bond and the two renewals, taken together, was to create a continuous obligation. Counsel for plaintiff insist that certain language in the bond shows, and the character of the transaction indicates, that it was intended that the Proctor Coal Company should be insured against any dishonesty on the part of Stanton occurring at any time from December 1, 1898, up to December 1, 1901, discovered during such period of continuous insurance, or within six months from the expiration of such period. The opposite contention is that each renewal was a new contract of insurance; that each renewal was a separate and distinct obligation of suretyship, the renewals having embodied in them all the terms and provisions of the original bond as is expressly stated in the renewal receipts. It is then urged that, if each renewal be a new contract, this suit must fail for this reason, that it is a suit upon the original bond, and therefore an amendment setting out and declaring upon renewals would be adding new and distinct causes of action, which could not.be allowed; and that, as a suit upon the original bond, it would fail because no loss was discovered within six months from the expiration of the original bond—that is, within six months from December 1, 1899.

I think the contention of counsel for defendant that these renewals are separate and distinct contracts is sound. It is urged that certain language in the bond shows that it was intended to be a continuous contract covering the period of the bond or of any subsequent renewals. The language referred to is this: "Make good and reimburse to the employer all and any pecuniary loss sustained by the employer," etc., "occurring during the continuance of this bond or any renewal thereof, and discovered during said continuance, or within six months thereafter." I am unable to agree with the argument of plaintiff as to the proper construction to be put upon this language. I think it should be construed so as to read in this way: "Occurring during the continuance of this bond or any renewal thereof, and discovered during the continuance of this bond, or during the continuance of any renewal;" that is, that the discovery must be within six months of the expiration of the original bond, or within six months of the expiration of any renewal thereof. I do not think the language is sufficient to justify the conclusion that this was a continuous contract of suretyship running through the whole period covered by the original bond and the two renewals. The correct view seems to be that each renewal is a separate and distinct contract, and such I think is the effect of the ·authorities on the subject. Mayor and Council of Brunswick v.

Harvey, 114 Ga. 733, 40 S. E. 754; De Jernette v. Fidelity & Casualty Co. (Ky.) 33 S. W. 828.

Attention is called by counsel for the plaintiff to the difference in the language of the two renewal contracts. In the first renewal the language is:

"In consideration of the sum of twenty-five dollars, the United States Fidelity & Guaranty Company hereby guarantees the fidelity of C. H. Stanton, in the sum of five thousand dollars, in favor of the Proctor Coal Company, from the 1st day of December, 1899, to the first day of December, 1900, subject to all the covenants and conditions set forth and expressed in the bond of this company No. 27,178, heretofore issued on the 1st day of December, 1898."

In the second renewal the language is:

"In consideration of the sum of twenty-five dollars, the United States Fidelity & Guaranty Company hereby continues in force bond No. 27,178 in the sum of five thousand dollars," etc.

It is claimed that the language, "hereby continues in force," gives strength to the argument that the contract was a continuous one from the beginning of the original bond to the end of the last renewal.

While there is some force in this contention, I do not think the use of this language is sufficient to change the conclusion reached that these renewals are new and distinct contracts. There is very little difference between continuing a contract and renewing it. But, besides this, it is perfectly clear that the first renewal created a new and distinct contract, and, this being true, the second renewal could not well be called a continuance of the original contract, in the sense claimed by counsel for the plaintiff.

It is urged by counsel for defendant that this case is controlled by the case of Mayor and Council of Brunswick v. Harvey, supra. That was a suit like this, upon a bond of fidelity insurance, and against the same company, the United States Fidelity & Guaranty Company. In that case it was held by the Supreme Court of Georgia that the suit was on the original bond, and, that being true, it could not be amended by declaring on the renewals, because under the facts there it would be adding new and distinct causes of action, and that, as the dishonesty of the official insured was not discovered within six months from the expiration of the original bond, there could be no recovery against the company.

It is earnestly contended that that case is like this in every respect. I am unable to agree with this contention. There is a marked difference between the two cases. In that case, as gathered from the opinion by the Chief Justice, the only reference in the declaration to the renewals was that the company had "renewed the said bond from year to year, and continued the same in force without intermission, * * * to and through the year ending February 1, 1901." In the present case the declaration with reference to the first renewal is as follows:

"Petitioner avers that, in accordance with the terms of said bond, on December 18, 1899, the said defendant company, for and in consideration of a like premium paid to said defendant company by petitioner, renewed said original bond aforesaid, for the term of one year—that is, from December 1, 1899, to December 1, 1900—and that all of the conditions and obligations contained in the original bond were renewed and kept in force until December 1,

1900, a copy of which renewal is hereto attached, marked 'Exhibit G,' and made a part of this petition."

And again, with reference to the second renewal:

"Petitioner further avers that on the 19th day of February, 1901, said original bond was again renewed by said defendant company, continuing said bond, with all of its covenants and conditions, in force until the 1st day of December, 1901, a copy of said continuation certificate being hereto attached marked 'Exhibit H,' and made a part of this petition."

Copies of the original certificates, signed by the officers of the company, are attached to the declaration as stated in the above paragraphs.

The renewals in this case were therefore set out more carefully and elaborately than in the case referred to. The principal distinction, however, between the two cases is that in the case of Mayor and Council of Brunswick v. Harvey, 114 Ga. 733, 40 S. E. 754, the amendment sought to sue upon the renewals as adding a new and distinct liability. The amount of the bond in that case was $15,000, and the original suit was for that amount. The amendment alleged that the default was $54,000, and the suit, as sought to be amended, would have been for $45,000—$15,000 on the original bond, and $15,000 on each of the two renewals.

Discussing the case further, in the opinion the Chief Justice says:

"The intention of the pleader when he drew the original petition was manifestly to sue upon the original bond alone. A careful reading of the petition will demonstrate this. While the petition alleged that the defalcation amounted to more than $21,000, the prayer for judgment against the defendants was for but $15,000 (the amount of the original bond), and the petition refers to the liability of the company as $15,000. It did aver that the company had 'renewed the said bond from year to year, and continued the same in force without intermission * * * to and through the year ending February 1, 1901'; but the context shows that the pleader regarded the renewals as merely continuations or extensions of the bond first given, and not as new and separate contracts or obligations. New counsel put in control of the case seem to have differed with counsel who filed the petition. They offered the amendment whereby it was sought to include the renewals as separate and independent contracts, and to recover $15,000 upon each of the renewals as well as the sum of $13,000 on the original bond; the loss being stated at more than $54,000. This amendment was offered as amplifying the allegation that the bond had been continued from time to time and renewed from year to year. We think we have shown that the intention of the pleader was to sue on the first bond only, treating the renewals as simply extensions of that bond. We think, therefore, that the amendment was properly disallowed. If the original suit had been for $45,000, and by mistake or accident the renewals had not been specifically declared on, but only mentioned in this general way, perhaps the original petition could have been amended by setting out the renewals and declaring on them. Inasmuch, however, as the only sum sued for was $15,000, and the petition shows that the suit was based upon the original bond only, the allowance of the amendment offered would have been to add new and distinct causes of action, which is contrary to the laws of pleading and practice in this state and to Civ. Code [1895] § 5099."

In the case at bar the suit was originally for $5,000, and the amendment only seeks to set out specifically the loss which occurred during the continuance of the last renewal; that is, from December 1, 1900, and up to the discovery of the loss, on the 8th of August, 1901. The amount sued for is not increased at all by the amendment. The only effort of the amendment, so far as pertinent to this particular matter,

is to segregate the items constituting the defalcation, and to set out the part embraced in and covered by the last renewal.

It is not at all clear from the language of the Chief Justice in the case referred to that if the only effort in that case had been to do what is done here, to amend by attaching the items covered by the last renewal, that the right to amend would have been denied. So that, giving that decision due weight, it is not thought to be controlling in the case now under consideration.

Another question is presented in this case by the following clause in the contract under consideration:

"That the company, upon the execution of this bond, shall not thereafter be responsible to the employer under any bond previously issued to the employer on behalf of said employé; and, upon the issuance of any bond subsequent hereto upon said employé in favor of said employer, all responsibility hereunder shall cease and determine, it being mutually understood that it is the intention of this provision that but one (the last) bond shall be in force at one time, unless otherwise stipulated between the employer and the company."

It is claimed that, if the court should hold that the renewals are new contracts, the effect of so holding would be to destroy the provision of the contract which gives the insured the right to discover a defalcation within six months after the termination of the bond. I do not think so. In my opinion, the whole purpose and intention of this clause is that there shall not be double responsibility on the part of the company. It is not at all inconsistent with the right to discover within six months after the expiration of the original bond or any renewal the dishonest acts of the employé, and to claim indemnity for the same. The original bond and each renewal stands for the malfeasance of the employé during the continuance of each and discovery within six months after the termination of each. The purpose of the above clause evidently is to avoid double liability on the part of the company; that it shall not be liable beyond the amount of the bond as originally given and renewed. Taking this contract altogether, this, in my opinion, is the proper construction to place upon this clause.

My conclusion is that, as the pleadings now stand, this case may proceed for the purpose of recovering from the defendant such loss as may be properly shown to have been sustained by the plaintiff by reason of the dishonest acts of Stanton during the period covered by the last renewal; that is, from December 1, 1900, up to the discovery of the alleged shortage, on August 8, 1901. An order to this effect may be taken on the demurrer.