Hardison v. Yeaman.

W. T. HARDISON & CO. v. JAMES H. YEAMAN *et al.*

and

E. T. MURRAY & CO. *v.* JAMES H. YEAMAN *et al.*

(*Nashville.*   December Term, 1905).

1. **PUBLIC WORKS.** Contractor's bond to furnish materials and labor is not equivalent to statutory bond to pay for materials and labor used in the contract.

   The bond of a contractor employed to build a courthouse for a county conditioned to provide and furnish the labor and materials of every description necessary to complete such courthouse is not equivalent to the statutory bond whose condition is required to be to the effect that the contractor will pay for all the materials and labor used in the contract for the construction of the public work. (*Post. pp.* 645, 648.)

   Acts cited and construed: 1899, ch. 182.

2. **SAME.** Bond of contractor of public works expressly providing for no liability except to the owner cannot be sued on by materialmen and laborers.

   An action for materials furnished and labor done will not lie on the bond of a contractor to construct public works, as a courthouse for a county, where the bond expressly provides that the surety shall not be liable thereunder to any one except the owner; for such a bond is not the statutory bond upon which such actions will lie. (*Post, pp.* 647, 649.)

   Acts cited and construed: 1899, ch. 182.

3. **SAME.** Same. Same. Surety on statutory bond of contractor for public works cannot be relieved from liability to furnishers of materials and labor by acts of the owner; otherwise, when.

Under a statutory bond of a contractor to construct public works, no act of the owner can relieve the surety from liability to the furnisher of materials and labor, while under the bond as shown in the first and second headnotes, any breach by the owener absolves the surety from all liability. (*Post, p.* 649.)

4. **SAME.** Same. Same. Same. No mechanic's lien on public buildings, and bond of contractor providing against liens will not give action to materialmen and laborers.

An action for materials furnished and labor done will not lie on the bond of a contractor to construct public works, as a courthouse for a county, where the bond expressly provides that the surety shall not be liable thereunder to any one except the owner, although it further provides that the owner, in estimating his damages, may include the claim of mechanics and materialmen arising out of the performance of said contract, and paid by him, only when the same are valid liens against his property, since there is no mechanic's lien on public buildings. (*Post, pp.* 647, 649, 651-654.)

Cases cited and approved: Electric Co. v. U. S. F. & G. Co., 110 Wis., 434; Sterling v. Wolf, 163 Ill., 467; Bank v. Masons, 98 U. S., 123; Parker v. Jeffery, 26 Or., 186; Merrill v. Green, 55 N. Y., 270; Sayward v. Dexter, 19 C. C. A., 176; Price v. Doyle, 34 Minn., 400.

5. **SAME.** Liability of officers for failure to take bond of contractor is not escaped by failure to give notice of claims to be protected by such bond.

Where public officers let a contract for the construction of public works, as a courthouse for a county, without requiring a bond of the contractor to pay for all materials and labor used therein, they are individually liable to the laborers and materialmen for the labor done and the materials furnished and

Hardison v. Yeaman.

used in the contract; and such liability is not escaped by the failure of the claimants to give notice of their claims within thirty days after the completion of the work, because the statutory provision as to notice is applicable only where the prescribed bond is given, and not where liability is incurred by failure to require such bond. (*Post, pp.* 646, 647, 654, 655, 657.)

Acts cited and construed:    1899, ch. 182.

Cases cited and approved:    Rhea. Co. v. Sneed, 105 Tenn., 581; Templeton v. Nipper, 107 Tenn., 548.

6.    **SAME. Building committee let the contract, though made subject to ratification by county court, and ratified by such court, and are liable for failure to take contractor's bond for protection of materialmen and laborers.**

The members of a building committee appointed by a county court to contract for the erection of a courthouse are the parties who let the contract within the sense of the statute (Acts 1899, ch. 182), where they enter into a contract for such building subject to ratification by the county court, and the ratification is made, with directions to such committee to have the same carried out, so that they are individually liable for failure to take the contractor's bond to pay for materials furnished and labor done, as required by statute. (*Post, pp,* 655-657.)

Acts cited and construed:    1899, ch. 182.

7.    **SAME. Members of a building committee appointed for erection of a courthouse are public officers, and are liable as such for failure to take contractor's bond, when.**

The members of a building committee appointed by a county court to contract for the erection of a courthouse are public officers, and incur the liability for the failure to exact and take the statutory bond of the contractor to pay for the materials and labor used in the contract. (*Post, p.* 657.)

Acts cited and construed:    1899, ch. 182.

Cases cited and approved:    Rhea Co. v. Sneed, 105 Tenn., 581; Templeton v. Nipper, 107 Tenn., 548.

8.  **SAME.** Reserve payments applied to completion of building, for default of contractor regardless of prior creditors for materials and labor, when.

Where the contract for the erection of a courthouse for a county provided that certain deferred payments or reserve fund arising under the contract should be applied to the completion of the building in case of the default of the contractor, and the contractor's bond to the county made the same provision on behalf of the surety, the furnishers of labor and materials, who in no way impounded such deferred payments or reserve fund, are not entitled to recover of the surety on the bond or the building committee, because by agreement between the contractor, the county through said committee, and the said surety, the deferred payments or reserve fund was applied to the completion of the building, and not to the payment of their claims. (*Post, pp.* 657-661.)

9.  **SAME.** No implied contract by county to pay materialmen and laborers of its contractor to build courthouse, when.

There is no implied contract on the part of a county to pay for the materials and labor used by its contractor in the erection of a courthouse for a stipulated sum, where the materials are purchased and the laborers are employed by such contractor, without paying for the same. (*Post, pp.* 652, 653, 660, 661.)

Cases cited and approved: Rhea Co. v. Sneed, 105 Tenn., 581 Templeton v. Nipper, 107 Tenn., 548.

10.  **SAME.** Materialmen and laborers can assert no claim against a fund due the contractor previously subjected by garnishment by other creditors, when.

Where, after the completion of a courthouse, there remains a fund due to the contractor, which is subjected by garnishment by a creditor of the contractor to the payment of his debt, materialmen and laborers, without having impounded the fund, are not entitled to subsequently assert any interest therein. (*Post, pp.* 661, 662.)

Hardison v. Yeaman.

11. **SURETIES.** Not bound beyond the limits of their engagements.

It is axiomatic and fundamental that the obligation of a surety is *strictissimi juris*, and cannot be extended beyond the limits of his engagement. (*Post, pp.* 649-651, 653, 654.)

Code cited and construed: Sec. 4894 (S.); sec. 3879 (M. & V.); sec. 3162 (T. & S. and 1858).

Cases cited and approved: Nichol v. McCombs, 2 Yer., 83; Triplet v. Gray, 7 Yer., 16; Kincannon v. Carroll, 9 Yer., 14; Maxwell v. Salts, 4 Cold., 233; Cross v. Scarboro, 6 Bax., 136; Mason v. Harris, 11 Lea, 69; State v. Polk, 14 Lea, 6; Brunswick v. Harvey, 114 Ga., 733; Kingsbury v. Westfall, 61 N. Y., 356; Lang v. Pike, 27 Ohio St., 498; Sterling v. Wolf, 163 Ill. 467.

FROM DAVIDSON.

APPEAL from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

PARKS & BELL, for Hardison & Co.

JNO. L. NOLEN, for Murray & Co.

B. A. BUTLER, for J. T. Anderson *et al.*, the Building Committee.

P. D. MADDIN, for Fidelity & Deposit Co.

MR. JUSTICE M'ALISTER delivered the opinion of the Court.

The litigation in this cause grew out of the building of a courthouse for the county of Jackson, at Gainesboro. The building was constructed under the supervision of a building committee, composed of J. T. Anderson, M. L. Gore, B. J. Franklin, W. F. Saddler, and W. W. Draper, appointed by the county court for said purpose. The contract was awarded to James H. Yeaman, of Nashville, and in the progress of the work Yeaman employed plaintiffs E. T. Murray & Co., to furnish the material and to put on the roof, that amounted to $1,725.10, which the contractor failed to pay. Yeaman also purchased certain materials from W. T. Hardison & Co., and became indebted to them in a balance of $353.70. The contractor, Yeaman, entered into a bond in the sum of $10,000, with the Fidelity & Deposit Company of Maryland as surety, conditioned for the faithful performance of the work. The complainants, W. T. Hardison & Co. and E. T. Murray & Co., have brought the present bills, which were consolidated and heard together in the court below, against the building committee, and also against the Fidelity & Deposit Company, to recover balances alleged to be due them for work performed and materials furnished the contractor in the course of the building.

The chancellor pronounced a decree in favor of the complainants against all of the defendants for the full amount of their respective claims. On appeal, the court

Hardison v. Yeaman.

of chancery appeals reversed the decree of the chancellor as to the Fidelity & Deposit Company, but affirmed the decree against the building committee. Complainants, E. T. Murray & Co., and W. T. Hardison & Co., appealed to this court from so much of the decree of the court of chancery appeals as adjudges the defendant Fidelity & Deposit Company not liable. The defendants J. T. Anderson, M. L. Gore, B. J. Franklin, W. F. Saddler, and W. W. Draper appealed from the entire decree.

It appears that the building committee entered into a written contract with the defendant J. H. Yeaman on January 6, 1903, to furnish the materials and build said courthouse, and that on March 20, 1903, the said Yeaman executed to the said committee a bond, with the defendant the Fidelity & Deposit Company of Maryland as security, conditioned that the said Yeaman should faithfully perform and discharge all the terms, covenants, conditions, specifications, and stipulations in said contract. The liability of the defendants was made to turn largely upon the question whether the bond executed was in compliance with chapter 182, p. 358, Acts 1899, as follows:

"Section 1. That hereafter no contract shall be let for any public work in this State by any city, county or State authority, until the contractor shall first execute a good and solvent bond to the effect that he will pay for all the materials and labor used in said contract in lawful money of the United States.

"Sec. 2. That any laborer or furnisher of material may bring an action on such bond, and make recovery in his own name, upon giving security or taking the oath prescribed for poor persons as provided by law, and in the event of such suit, the city, county or State, shall not be liable for any costs accruing thereunder.

"Sec. 3. That if any public officer whose duty it is to let or award contracts shall let or award any contract without requiring bond for the payment of labor and material, in compliance with the provisions of section 1 hereof, such officer shall be guilty of a misdemeanor.

"Sec. 4. That the laborer or furnisher of materials, to secure advantage of this act, shall file with the public officer who has charge of the letting of any contract, an itemized statement of the amount owed by the contractor for materials and labor used, within thirty days after the contract is completed."

The court of chancery appeals was of opinion that the Fidelity & Deposit Company were not liable to complainants because the bond was not executed as required by chapter 182, p. 358, Acts 1899, but that the members of said building committee were individually liable for a breach of official duty in not taking a bond as required by said act.

The court of chancery appeals, in adjudging liability against the members of the building committee, based its decree on the case of *Rhea County* v. *Sneed,* 105 Tenn., 581, 58 S. W., 1063, where it was held that "a public bridge is a public work within the meaning of the act

Hardison v. Yeaman.

of 1899 forbidding the letting of any public work for city, county, or State until the contractor shall first execute a good and solvent bond to the effect that he will pay for all materials and labor used in said contract," and county bridge commissioners letting such bridge without executing such bond are not only indictable under said act, but liable in a civil action for any damage resulting to laborers and materialmen, who would have been protected by the prescribed bond, if executed. *Templeton* v. *Nipper,* 107 Tenn., 548, 64 S. W., 889.

We shall first notice the following assignments of error on behalf of the building committee to the decree of the court of chancery appeals.

"(3) The court of chancery appeals erred in dismissing complainant's bill in so far as it sought a recovery against the Fidelity & Deposit Company, surety on the bond of Jas. H. Yeaman, the contractor.

"(4) The court of chancery appeals erred in holding that the bond given by Jas. H. Yeaman with the Fidelity & Deposit Company was only a common-law bond, and was not given in accordance with and in pursuance of the act of 1899.

"(5) The court of chancery appeals erred in holding that the complainants could not sue on the bond given by Jas. H. Yeaman, with the Fidelity & Deposit Company as surety, dated March 20, 1903, in their own names, and enforce collection of their demands against said surety."

In comparing the stipulations of the bond herein ex-

ecuted by the Fidelity & Deposit Company with the requirements of the act of 1899, the following prominent differential features will be noticed: It may be remarked in the first place that the court of chancery appeals finds as a fact that none of the parties to this litigation had ever heard of Acts 1899, p. 359, c. 182, until after the materials were furnished, and, of course, in executing the bond herein, did not have said act in contemplation. It is, nevertheless, strenuously insisted on behalf of the building committee that said bond is in conformity with the requirements of said act.

An analysis of the statute will show:

(1) That it requires the execution of a bond wherein the contractor obligates himself to pay for all material and labor used in said contract. No such stipulation is contained in this bond. It has been suggested, however, by counsel for appellant, that this requirement is satisfied by the stipulation by the contractor in his original contract, and also in his bond "to provide good, proper, and efficient materials of all kinds whatsover for the proper and efficient finishing and completing of all work arising under the contract, and to furnish all materials, labor, etc., of every description." It is very plain that this language does not bind the contractor to pay materialmen and laborers for the material furnished and work done by them, but is simply a stipulation that the contractor will furnish all material and labor necessary in the construction of the building without cost to the owner.

(2) A right of action on such bond is expressly given any laborer or furnisher of material who may sue and make a recovery in his own name, while the bond actually executed by the Fidelity & Deposit Company expressly provides "that it shall not be liable under this bond to anyone except the owner."

(4) It is also true, as suggested by counsel, that under the statutory bond no act of the owner could relieve the surety from liability to the furnisher, while under the present bond any breach by the owner of the thing stipulated to be done by him would absolve the surety from all liability.

There are probably other omissions in this bond which are required by the act of 1899, but it will not be necessary to further trace the points of divergence between the bond actually executed and the statutory bond. It suffices to say that the bond executed herein by the Fidelity & Deposit Company does not embody any of the main requirements of the act of 1899, and cannot, by the most latitudinarian construction, be held to have been executed in pursuance of the provisions of that act.

It is axiomatic and fundamental that the obligation of a surety is *strictissimi juris,* and cannot be extended beyond the limits of his engagement. *Cross* v. *Scarboro,* 6 Baxt., 136. It has been held that, where a city takes the usual form of fidelity bond from a surety company in the place of the form of official bond prescribed by statute, the statute cannot be read into it, and the State must abide by the terms and limitations of the bond as

given. *Mayor of Brunswick* v. *Harvey,* 114 Ga., 733, 40 S. E., 754.

. In *Kingsbury* v. *Westfall,* 61 N. Y., 356, the court said: "It is now too well settled to admit of doubt that a guarantor, like a surety, is bound only by the strict letter or precise terms of the contract of his principal, whose performance of it he has guaranteed, that he is in this respect a favorite of the law, and that a claim against him is *strictissimi juris."*

In *Lang* v. *Pike,* 27 Ohio St., 498, the court said: "No covenants that do not appear in the face of the bond can be employed as against the sureties thereon. . . . No principle is more firmly settled in this State than this: That sureties may stand on the very terms of a statutory bond or undertaking. So clearly has this doctrine been announced and acted upon that it may be regarded as entering into the condition of such an undertaking that it will not be extended by the court beyond the necessary import of the words used. It will not be implied that the surety has undertaken to do more or other than that which is expressed in such obligation."

In *State* v. *M. T. Polk et al.,* 14 Lea, 6, it was stated that the bond which the statute requires the treasurer of the state to give is a joint and several bond, each obligor becoming bound for the entire penalty; but if the treasurer execute the bond, which is accepted, binding each of the sureties for only an aliquot part of the penalty, the sureties cannot be held liable beyond the terms of the contract. In the midst of the opinion, Judge Cooper said

that "upon common principles, it is clear that the surety cannot be held bound beyond the terms of the bond, for the obvious reason that persons can only be held liable by the contract which they have actually entered into." *Nichol* v. *McCombs,* 2 Yerg., 83; *Triplet* v. *Gray,* 7 Yerg., 16; *Kincannon* v. *Carroll,* 9 Yerg., 14, 30 Am. Dec., 391; *Maxwell & Mulligan* v. *Salts,* 4 Cold., 233; *Mason* v. *Harris,* 11 Lea, 69.

In this last case, there was a judgment on a promissory note. On appeal by the defendant who executed bond for damages and costs only, and not for the debt, the court said: "By Code, sec. 3162, in actions founded on promissory notes where defendant appeals, the bond must be for the debt, interest, and costs. The bond in this case was for the costs and damages only, and is not as the statute required; but it has long been the settled law of this State that, where a bond given for the prosecution of a suit on appeal or a certiorari does not contain all conditions required, it will be good so far as it goes. If the case be proceeded with on behalf of the bond, a judgment may be rendered against the principal and surety to the extent of the bond, and against the principal alone for the residue. If, therefore, the bond be only for damages and costs when it should have been for the debt alone, the judgment against the surety can only be for damages and costs."

The next inquiry is whether the complainants are entitled to maintain an action against the Fidelity & Deposit Company. An examination of this bond will

clearly disclose that it was not executed in any sense for the security of the laborer or materialmen, but was exclusively for the benefit of the owners of the property against any default on the part of the contractor. There is no stipulation in the bond nor in the contract that the contractor will pay the materialmen for the material furnished, or the laborers for work done during the progress of the work. The bond expressly provides that "the surety shall not be liable under this bond to any one except the owner; but it is agreed that the owner in estimating his damages may include the claim of mechanics and materialmen arising out of the performance of said contract, and paid by him only when the same, by the statutes of the State where the contract is performed, are valid liens against his property." But it must be conceded that the claims of complainants for work done and material furnished are in no sense liens on the property, since there is no mechanic's lien on public buildings, and the county of Jackson is not made a party defendant in this cause for the assertion of any supposed lien.

It has moreover, been held that the law implies no contract on the part of a county to pay laborers employed in the construction of a public work, where the contract for the building has been let at a stipulated price, and the company and its subcontractors employ such laborers. *Rhea County* v. *Sneed,* supra.

Moreover, it is shown that the building was completed and that Jackson county sustained no loss, and hence

there is no ground for a recovery by complainants on the theory of the loss sustained by the county. Now, as already stated, the materialmen and laborers were not provided for in this bond, and clearly have no right of action against the sureties. *Electric Co.* v. *U. S. F. & G. Co.,* 110 Wis., 434, 85 N. W., 648, 53 L. R. A., 609; *City of Sterling* v. *Wolf,* 163 Ill., 467, 45 N. E., 218. In this last case it appeared that a sewer builder made a proposal to the city to build certain sewers and "to furnish such surety for the faithful performance of such contract, the payment of materials contracted for as may be approved by the city council." A contract was entered into by which he agreed to do the work for a certain price, "to furnish all labor, materials and tools necessary to execute the entire work," and his proposal was expressly made a part of the contract. It was held that the defendants, who were sureties upon his bond "conditioned for the faithful performance of his contract," were not liable for his non-payment of one who furnished the brick. The court said: "The rule has been reannounced by the court in almost numberless cases that the undertaking of a surety is strictly considered, and may not be extended by implication or construction; that he cannot be held beyond the express terms of his undertaking. The law is *stricti juris.* In case of doubt, the doubt is generally resolved in his favor. To hold that it was intended by the parties that the sureties for Real were to become responsible to third parties for all of the material, labor, and tools employed by him in the

performance of his contract with the State would be to hold the sureties liable not only beyond the letter of their contract, but make them liable by the most liberal, and we think unjustifiable, construction of their contract."

Hence there is no privity of contract between the Fidelity & Deposit Company and the complainants who furnished material to the principal contractor which would authorize the maintenance of a suit against the surety. *Nat. Bank* v. *Grand Lodge Masons,* 98 U. S., 123, 25 L. Ed., 75; *Parker* v. *Jeffery,* 26 Or., 186, 37 Pac., 712; *Merrill* v. *Green,* 55 N. Y., 270; *Sayward* v. *Dexter, Horton & Co.,* 72 Fed., 765, 19 C. C. A., 176; *Price* v. *Doyle,* 34 Minn., 400, 26 N. W., 14.

The seventh, eighth, ninth, tenth, and eleventh assignments of error on behalf of the building committee proceed upon the idea that complainants, as materialmen, had not given the proper notice as required by section 4 of the act of 1899. As already quoted, the fourth section of that act provides "that the laborer or furnisher of materials, to secure the advantage of this act, shall file with the proper officer who has charge of the letting of any contract, an itemized statement of the amount owed by the contractor for materials and labor used, within thirty days after the contract is completed."

But these assignments of error all proceed upon the idea that chapter 182, p. 358, of the Acts of 1899, is applicable in determining the rights of the parties to this litigation; but, since we have held that the bond ex-

ecuted by the Fidelity & Deposit Company in this case was not made in pursuance of the act of 1899, the provisions of that act on the subject of notice are likewise inapplicable to this case, so that these assignments of error for this reason must be overruled.

The twelfth assignment is that the court of chancery appeals erred in not holding that the defendants J. T. Anderson, M. L. Gore, W. F. Saddler, W. W. Draper, and B. J. Franklin, constituting the building committee, can in no event be held liable in this case, since they are not the owners of the building, and were not the parties required to take the bond as prescribed by the act of 1899.

In support of this assignment of error it is urged on behalf of the building committee that as a matter of fact the contract with Jas. H. Yeaman was not made by them, but by the county court; that this committee had been appointed by the county court simply to carry on negotiations with builders and contractors, examine plans and specifications, ascertain cost and expenses, and then report back to the county court with a recommendation of the plan to be adopted by the court. It is then said that the building committee did make a contract with Yeaman to furnish the material, labor, etc., and construct a building at a cost of $14,000, and at the January term, 1903, presented this contract to the county court for ratification or rejection. At the same time, it is claimed said building committee also reported to the county court an option it had with Yeaman to build a

larger courthouse at a cost of $17,500. It is said the county court did not ratify or confirm the contract for the $14,000 building, which the building committee recommended, but accepted the option for the more commodious and expensive structure. But the court of chancery appeals finds that the report of the building committee was adopted, ratified, and confirmed, since it also embraced the $17,500 proposition of Jas. H. Yeaman already mentioned. Accordingly a resolution was adopted by that court "authorizing, empowering, and directing the building committee to have said contractor, Jas. H. Yeaman, proceed with the erection and construction of said courthouse on the lot now occupied by the old courthouse, in the town of Gainesboro, Tennessee, in accordance with the terms and provisions of said contract, and the terms and provisions of this decree and order constructing the larger, or seventy by seventy foot, building and report their action to the next October term of the court."

Now it is evidence that the building committee had already entered into a written contract with Yeaman for either the $14,000 or the $17,500 building subject to the ratification of the county court. To use the language of the court of chancery appeals: "This committee made their report in which they submitted a plan for a courthouse they had selected as the proper one for the quarterly court to adopt, and further reported they had contracted with and employed J. H. Yeaman, as architect and builder, to build said courthouse, and filed the con-

tract and stipulations with said court for its considera-
tion."

So that in our opinion the contract was let by the
building committee within the meaning of the first sec-
tion of the act of 1899, although the county court ratified
and confirmed its action.    It is next insisted that said
building committee was not a public officer within the
meaning of said act of 1899.    Section 3 of said act pro-
vides "that if any public officer whose duty it is to let or
award contracts shall let or award any contract with-
out requiring a bond for the payment of labor and ma-
terial, in compliance with section one of said act, shall
be guilty of a misdemeanor."

As already seen, it was held by the court in *Rhea Co.*
v. *Sneed,* 105 Tenn., 581, 58 S. W., 1063, that the com-
missioners appointed by the county court to supervise
the construction of a bridge, who let the contract with-
out exacting the bond required by the act of 1899, are
not only indictable under said act, but liable in a civil
action for any damages resulting to laborers and mater-
ialmen who would have been protected by the prescribed
bond, if executed.    See, also, *Templeton* v. *Nipper,* 107
Tenn., 548, 64 S. W., 889. So it is evident that the bridge
commissioners in *Rhea Co.* v. *Sneed,* supra, were consid-
ered public officers within the meaning of the act of 1899,
else no judgment could have been pronounced against
them.    But it is said the Fidelity & Deposit Co. is liable
to complainants for the reason that when Yeaman made
default in completing the building, the surety company

agreed that the building committee might complete with the reserve fund of eighty per cent due Yeaman.

The court of chancery appeals finds that Yeaman, the contractor, quit work on the building some time in November, 1903, and that on December 17, 1903, the building committee notified him in writing that in accordance with the provisions of the bond and contract they would take charge of the building and finish it. A new contract was then entered into between the building committee, Yeaman, and the surety company, by which it was agreed that the reserve fund of twenty per cent, due Yeaman and held by the committee as indemnity could be used to complete the building, and that no bills created prior to January 1, 1904, should be paid out of this reserve fund, amounting to $3,500. Now it is insisted on behalf of complainants, the materialmen, that the building committee should have applied this fund to the payment of their claims and not to the completion of the building, and then looked to the surety company for reimbursement for the loss, and that, having failed to do so, both the building committee and the surety company making this agreement are both liable for a misappropriation of these funds.

The bond executed by the Fidelity & Deposit Company provided, viz.: "If the said principal shall voluntarily abandon said contract, or be lawfully compelled by the owner to cease operations thereunder, by reason of his nonperformance of any of its terms, or conditions, then the surety shall have the right, in its option, to assume

said contract and to sublet or complete the same; and if said contract shall be assumed by the surety, then as such contract is duly performed, any reserve deferred payments and all other moneys provided by said contract to be paid to the principal, shall be paid to the surety," etc.  Again, it is provided that "if the owner shall complete or sublet the contract . . . then all reserves, deferred payments, and all other moneys provided by said contract to be paid to the principal, shall be paid to the surety at the same time and under the same conditions as by the terms thereof such moneys would have been paid to the principal had the contract been duly performed by him.  And if such owner shall complete or relet said contract, then any forfeitures provided in said contract against the principal shall not be operative as against the surety, but all reserves, deferred payments, and all other moneys provided in said contract, which would have been paid to the principal had he completed the contract in accordance with its terms, shall be credited upon any claim the owner may make upon said surety."

The written contract between the building committee and James H. Yeaman, the contractor, entered into on the 6th day of January, 1903, provided as follows: "And should the contractor, at any time during the progress of the work, fail, refuse, or neglect to supply sufficient materials, or workmanship, or refuse, or neglect, to comply with any of the articles of this agreement, the building committee, or architect, shall have the right

and power to enter upon and take possession of the premises, and to provide materials and workmen sufficient to finish said work after giving a ten days' notice in writing, and the expense shall be deducted from the amount of the contract."

These extracts from the contract and from the bond, we think conferred express authority upon the building committee on default of the contractor in fulfilling his agreement to take possession of the building and building committee deducting the expense from the amount of the contract.

It is to be observed further that under the contract of suretyship, the Fidelity & Deposit Company were entitled to have such reserve fund and deferred payments applied to its exoneration from liability under the contract. We are unable to perceive how complainants are entitled to any recovery against the surety company on account of the appropriation of the reserve fund to the completion of the building. The complainants, as a matter of law, had no lien on the building for labor done or materials furnished, nor had they impounded in any way this reserve fund for the liquidation of their claims. There was no implied obligation resting on the county of Jackson to pay the claims of materialmen or laborers, since these were the obligations of the contractor, James H. Yeaman. There is no implied obligation on the part of the county to pay for material purchased by the contractor, or for labor employed by him, which he has failed to pay. It was so expressly decided in

*Rhea Co.* v. *Sneed,* supra, and in *Templeton* v. *Nipper,* supra.

As already seen, the contractor in his written agreement with the county of Jackson, through its building committee, had obligated himself "to provide such good, proper, and sufficient materials, of all kinds whatsoever, for the proper and efficient finishing and completing of all work arising under this contract, and all for the sum of $14,000," etc.

This stipulation was repeated in the contract in the following language: (a) Also "to furnish all materials, labor, scaffolding implements, molds, patterns, templates, and cartage, of every description, for the faithful and prompt performance of this contract." It therefore appears that the county of Jackson was to be at no expense in the erection of said building outside of the stipulated contract price. It was alleged in the bill that the contract and the bond given by the surety company provided that Yeaman will pay for all materials furnished to go into the courthouse, but a careful examination of the contract and bond will show that no such stipulation appears in their instrument.

It turned out that after the completion of the courthouse by the building committee under the new arrangement there was left in its hands a balance of $750. It appears from the findings of the court of chancery appeals that James H. Yeaman, the contractor, having become indebted to the Bank of Gainesboro for money loaned him and which he expended in the construction

of the courthouse, J. T. Anderson, cashier of the bank, sued Yeaman and procured a judgment against him, and then ran a garnishment on J. T. Anderson as chairman of the building committee, and in this way secured this fund.

As already stated, no steps were taken by either of the complainants to impound this fund, or any part of the reserve fund due the principal contract on account of his work, and hence they are not entitled now to assert any interest in said fund.

Affirmed.