FIDELITY & CASUALTY CO. OF NEW YORK v. CONSOLIDATED NAT. BANK.

(Circuit Court of Appeals, Third Circuit. December 27, 1895.)

No. 7.

PENAL BOND—CONSTRUCTION—SURETYSHIP FOR EMPLOYE.

A bank employé's bond, conditioned for the reimbursement of any loss sustained by reason of fraud or dishonesty in connection with his duties, provided that any claim under the bond should embrace and cover only acts and defaults committed during its currency, and within 12 months next before the date of discovery of the act or default upon which such claim was based. *Held*, that the bond did not cover a default committed more than 12 months prior to its discovery, which would, however, have been discovered within a year from its commission had not such discovery been prevented by the act of the employé in falsifying the books during the year preceding the discovery. 67 Fed. 874, reversed.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Richard P. White, for plaintiff in error.

John G. Johnson, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and WALES, District Judge.

DALLAS, Circuit Judge.    The demand of the plaintiff below was founded upon a bond as follows:

"No. 45,074.                                                                                          $14,000.

"This bond, made the thirtieth day of September, in the year of our Lord one thousand eight hundred and eighty-nine, between the Fidelity and Casualty Company of New York, hereinafter called the 'company,' of the first part, and Theo. F. Baker, of Philadelphia, Pa., hereinafter called the 'employed,' of the second part, and Consolidation National Bank, hereinafter called the 'employer,' of the third part. Whereas, the employed has been appointed paying teller in the service of the employer, and has applied to the company for the grant by them of this bond, now, in consideration of the sum of seventy and $00/100$ dollars, as a premium for the term ending on the thirtieth day of September, eighteen hundred and ninety, at 12 o'clock noon, it is hereby declared and agreed that during such term, or any subsequent renewal of such term, and subject to the provisions and conditions herein contained, the company shall, at the expiration of three months next after proof satisfactory to the officers of a loss, as hereinafter mentioned, make good and reimburse to the employer, to the extent of the sum of fourteen thousand dollars, and no further, such pecuniary loss, if any, as may be sustained by the employer by reason of fraud or dishonesty of the employed in connection with the duties referred to, or the duties to which, in the employer's service, he may be subsequently appointed or assigned by the employer, which has been committed during the continuance of the said term, or any renewal thereof, and discovered during said continuance, or within six months thereafter, and within six months from the death, dismissal, or retirement of the employed: Provided, that on the discovery of any such fraud or dishonesty, as aforesaid, the employer shall immediately give notice thereof to the company, and that full particulars of any claim made under this bond shall be given in writing, addressed to the secretary of the company at its office in the city of New York, within three months after such discovery; and the company shall be entitled to call for, at the employer's expense, such reasonable particulars and proofs of the correctness of such claim as may be required by the officers of the company, and to have the same particulars, or any of them, verified by statutory declaration. And, upon the making of any claim, this bond shall wholly cease and determine as to acts subsequent to the date of making such claim, and shall be surrendered to the company on the payment of such claim. And provided, that the liability of the company under this bond shall not exceed the amount above written, whether the loss shall have occurred during the term above named, or during any continuance or renewal thereof, or partly during the said term, and partly during said continuance or renewed term. And provided, also, that if the employed shall become a defaulter under circumstances which may afford ground for the laying of a criminal information against him, and for which the employer intends making, or makes, claim on the company, the employer shall, if and when required by the company or its representatives, at the cost of the company, afford and render every information, evidence, aid, and assistance (not pecuniary) capable of being afforded by the employer, either for the purpose of prosecuting, bringing to justice, and convicting the employed for any criminal offense which may be substantiated, or for the purpose of enabling the company to procure reimbursement by the employed, or by his estate, of moneys paid by, or recoverable from, the company, under this bond; and, also, that if the employer

shall, at the date of this bond, or any time thereafter, be guarantied or hold any securities against loss covered hereby, the company shall only be liable to make good any such loss ratably, and in just proportion, taking into account the value of such security.

"This bond is issued subject also to the following conditions, viz.: That if the company shall so elect, the liability under this bond, or any renewal thereof, may be terminated at any time by notice in writing to the employer; and, in the event of such termination, the company shall, at the expiration of all liabilities hereunder, refund the premium paid, less a pro rata part thereof for the time said liability shall have been in force. That any willful misstatement or suppression of fact by the employer in any statement or declaration to the company concerning the employed, or in any claim made under this bond, or a renewal thereof, renders this bond void from the beginning. That during the continuance in force of this bond, or a renewal thereof, the right to make a claim thereunder shall cease at the expiration of six months from the date at which the employed shall cease to be in the employ of the employer. That this bond, or any renewal thereof, will become void as to any claim which may arise subsequent to the occurrence of any act on the part of the employed which may involve a loss for which the company is responsible hereunder to the employer of over one hundred dollars, if the employer shall fail to notify the company of the same in writing immediately after the occurrence of such act shall have come to the knowledge of the employer. That this bond, or any renewal thereof, will also become void from the beginning if the employed covered hereunder has, within the knowledge of the said employer, been a defaulter at any time during his service. That any claim made under this bond, or a renewal thereof, shall embrace and cover only for acts and defaults committed during its currency, and within twelve months next before the date of the discovery of the act or default upon which such claim is based. That any question as to the liability of the company to pay any claim under this bond shall, if the company require it, be referred to arbitration; the expense of such arbitration to be borne equally by the company and the claimant. That no suit or proceedings at law or in equity shall be brought, or arbitration required, to recover any amount hereby insured, unless the same is commenced, and the process served, within the term of twelve months next after the discovery of any such fraud or dishonesty, as aforesaid. And these presents witness that the employed hereby agrees to indemnify the company against any loss or damage it may sustain in consequence of such guaranty; and forthwith, after the company shall have paid the employer, or any partner or partners, or other person or persons entitled to the same, any money under or by reason of such guaranty, to repay the company the amount so paid, and all other losses, damages, costs, charges, and expenses, if any, that the company shall in any way incur in consequence of such guaranty.

"In witness whereof, the said T. F. Baker (the employed) hath hereunto set his hand and seal, and the said company has caused this bond to be signed by its president and secretary, and its seal affixed, on this thirtieth day of September, 1889.          Wm. M. Richards, President.

"T. F. Baker, The Employed. [Seal.]

"[Company's Seal.]          Robt. J. Hillas, Assistant Secretary.

"Signed, sealed, and delivered by the 'Employed' in the presence of
"Name, R. M. Oberteuffer.
"Address, 531 N. 3d. St.
"Ex. W. Morris, Ent. W. M."

This bond was regularly renewed and extended to September 30, 1894. Theo. F. Baker was guilty of fraud and dishonesty, which was discovered on January 10, 1894. Consequently the plaintiff in error was bound to make good to the defendant in error such pecuniary loss as it had sustained by reason of Baker's defaults, committed within 12 months next preceding that date. During that period he had embezzled $5,000, for which the liability of the plaintiff in error

was and is admitted.    He had also, during the same period, falsified the books and balance sheets of the bank, and the jury was instructed that:

"If this latter misconduct prevented discovery of previous embezzlements, and thus prevented the recovery, on this account, from the defendant, of money which it otherwise would have recovered, the plaintiff is entitled to recover the loss thus sustained during a period of twelve months preceding the time when such embezzlements would have been discovered but for this concealment."

This instruction is included among the errors assigned, and the controlling question in the case is whether the liability which it affirmed is one which had been assumed by giving the bond in suit.    In other words, we are called upon to construe that instrument, to ascertain from the words used, and their relation to the facts, what, in this respect, was the intention of the parties in giving and accepting it. They certainly intended, for it was plainly said, that the bond should cover only acts and defaults committed within 12 months of the date of their discovery; yet the effect of the verdict which was rendered, and which was sanctioned by the charge, was to extend the obligation to a default which, as we view the subject, was committed more than 12 months prior to discovery; for, with reference to this matter, the loss in the contemplation of the parties was, as appears to us, that which the bank sustained by reason of the fraudulent abstraction of its money, and not any damage which it may have suffered in consequence of the subsequent prevention of its recovery of that loss under this bond.    Waiving any question as to whether such prevention of recovery constituted such a "pecuniary loss" as should be taken to be covered by the covenant for reimbursement, if that covenant were to be alone read and separately considered, we have, upon careful examination of the writing as a whole, been fully convinced that the covenantor's engagement cannot be so construed.    Throughout the document, the frauds as to which indemnification is undertaken are so mentioned in connection with the subject of their discovery as to repel the assumption that steps taken for the avoidance of detection were themselves to be regarded as independent fraudulent acts, the commission of which would have the effect of extending the time allowed for discovery of the primary and principal defaults.    One of the express conditions upon which the bond was issued, when understood as we think the parties must have understood it, absolutely forbids that assumption.    We refer to the provision that any claim made under the bond should "embrace and cover only for acts and defaults committed    *    *    *    within 12 months next before the date of the discovery of the act or default upon which such claim is based." What was in the minds of the parties when this condition was agreed to, and what did they understand it to mean?    If, by putting ourselves in their place at the time they contracted, we can arrive at a satisfactory answer to this question, the case before us may be briefly disposed of.    That the officers of the bank which accepted this bond, as well as those of the corporation which issued it, well understood the nature of the hazard to which it relates, may safely be assumed. They knew that the commission of fraud is generally supplemented by

precautions for its concealment, and that the teller of a bank who embezzles its money is very likely to tamper with its accounts to prevent their disclosure of his wrongdoing.   Can it be, then, that they intended that, if timely discovery should be prevented by such means, the prevention so occasioned would itself constitute a distinct basis of claim?   To so interpret the condition would be to render it unavailing in the event of that being done which, as we have said, must have been foreseen, and which, there being no expression to the contrary, must have been regarded as, at least, one of the contingencies which might cause the condition to become operative.   The manifest intent was to create a bar, and to the provision inserted for that purpose there cannot be annexed an exception or qualification not warranted by its terms, and the implication of which the circumstances of the case forbid.   The object was to preclude liability for a number of defaults, extending over a longer period than one year, and yet the present claim is that, in addition to $5,000, the amount of the embezzlements within such period, the indemnifying company is chargeable with the amount of other embezzlements which had been committed during a prior term.   We cannot sustain this demand, because to do so would, as we think, involve a misconstruction of the condition, and the defeat of its purpose.   The bank's position rests upon the assumption that it would have recovered its earlier losses, by action upon this bond, but for the fraudulent postponement of their discovery.   Let this be conceded, still it is obvious that seasonable discovery of the preceding dishonest acts would have rendered the perpetration of the succeeding ones impossible, and hence that the entire liability now asserted is one which could not possibly have accrued if discovery of the earlier embezzlements had been made within the prescribed time; and it is not possible to hold, in the face of a condition limiting liability by a requirement of discovery, that, by reason of nondiscovery, the liability so limited was extended or enlarged.

The judgment of the circuit court is reversed.