## AMERICAN INDEMNITY CO. v. JAGOE.
### No. 12983.

Court of Civil Appeals of Texas. Fort Worth.

May 4, 1934.

Rehearing Denied June 15, 1934.

Cantey, Hanger & McMahon, of Fort Worth, for appellant.

Sullivan, Speer & Minor, of Denton, for appellee.

DUNKLIN, Chief Justice.

The American Indemnity Company seeks reversal of the judgment of the trial court in favor of W. M. Jagoe on a policy of insurance on his automobile which was destroyed by fire.

The policy sued on stipulated for the payment of $750 for the loss of the car by fire, and under the heading "General Conditions" there were numerous provisions, including the following:

"Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage

"Property Excluded (a) To robes, wearing apparel, personal effects, or extra bodies (except that this exclusion does not apply to Property Damage coverage); or

"War, Riot, etc. (b) Caused directly or indirectly by invasion, insurrection, riot, civil war or commotion, military, naval or usurped power, or by order of any civil authority; or

"Limitation of Use (c) While the automobile described herein is used as a public or livery conveyance for carrying passengers for compensation; or while rented under contract or leased; or while the automobile insured hereunder is carrying any person or persons for a consideration, either actual or implied; and this policy shall not cover if the automobile insured hereunder be used even for one time for rental, hire or livery or for the transportation of passengers for hire; or operated in any race or speed contest; or while used in any illicit or prohibited trade or transportation; or, while any trailer, automobile, or any vehicle of any description is in any way attached to or connected with the automobile described in this policy, unless the policy is extended by endorsement to so cover, or while the automobile insured hereunder is used for the carrying of explosives not used in connection with the operation of the automobile, or for other unusual or hazardous purposes, or for any purposes not specified in Warranty 4. * * *"

The following stipulation under the foregoing heading of "Limitation of Use" was relied on by the indemnity company as showing that the risk of loss of the automobile by the fire which destroyed it was expressly exempted from the operation of the policy, to wit, "or while the automobile insured hereunder is used for the carrying of explosives not used in connection with the operation of the automobile." And that is the principal question presented by appellant on this appeal.

The case was tried without a jury and the trial judge has filed findings of fact and conclusions of law which appear in the record. He found that the automobile was destroyed by fire during the life of the policy; that due proof of loss was furnished the defendant and liability denied. Further findings by the court were as follows:

"I find that at the time said automobile was destroyed by fire the plaintiff was carrying in said car a can or container containing six or seven gallons of gasoline which was being carried from the plaintiff's place of business in the City of Denton to the city's airport, to be used in washing down or cleaning the motor of an airplane belonging to the plaintiff; that the plaintiff intended to carry it out to the airport in one of his trucks, but finding that it was at that time being used

for something else and in order not to delay the work of cleaning said airplane motor, the plaintiff put said can of gasoline in the back of his car, intending to go directly to the airport, but having received some complaint about the grade of gravel being hauled by his trucks, the plaintiff, instead of going directly to the airport started out to the gravel pit and while on the way the back end of the car suddenly burst into flames which destroyed said automobile.

"I find that this was the only time that the plaintiff had ever transported or carried gasoline in said automobile not connected with its operation; that the value of said automobile was approximately the sum of One Thousand Dollars ($1,000.00). * * * (Then follows a copy of the provisions in the policy set out above.)

### "Conclusions of Law.

"I conclude as a matter of law that the carrying of the can containing six or seven gallons of gasoline on the occasion in question did not constitute a violation of the condition of the policy pleaded by the defendant in defense of plaintiff's claim, in that the carrying of such quantity of gasoline in said automobile on a single occasion did not constitute the using of the car for the carrying of explosives within the meaning of the provision of the policy above quoted in contemplation of the parties to the contract, and that the plaintiff was, therefore, entitled to recover as prayed for, and judgment accordingly rendered."

Appellee invokes the general rule that a policy of insurance is to be construed favorably to the insured, and it is argued that the word "used" in the provision relied on by appellant should be construed to mean a continuous or habitual use rather than the use on one occasion only. Another stipulation in the same clause of the policy reads: ."And this policy shall not cover if the automobile insured hereunder be used even for one time *for rental.*" (Italics ours.) And it is further argued that the absence of the same stipulation relating to a single use in the provision in controversy implies that the use there mentioned was intended to mean a continuous use.

One of the decisions relied on is Fireman's Fund Ins. Co. v. Shearman, 20 Tex. Civ. App. 343, 50 S. W. 598, 599, by the Court of Civil Appeals (writ of error denied). In that case the court had under consideration the construction of the following stipulation in the policy: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if there be kept, used, or allowed on the above-de-

scribed premises * * * gasoline, * * * or other explosives."

The facts showed that the fire occurred as the result of a temporary use of the premises as an experiment for lighting. In the opinion the following was said: "Forfeiture clauses in policies are to be 'construed most strongly against the insurer' (New Orleans Insurance Co. v. Gordon, 68 Tex. 144, 3 S. W. 718), and to defeat a recovery on a policy on the ground of a violation of its terms there must be a substantial breach thereof. * * * We do not think it was contemplated by the parties to the contract that such a casual use of the fluid should forfeit the policy. The current of authority is to the effect that such use does not fall within the prohibiting clause of the policy. (Citing cases.)"

In Springfield Fire & Marine Ins. Co. v. Wade, 95 Tex. 598, 68 S. W. 977, 58 L. R. A. 714, 93 Am. St. Rep. 870, the policy sued on had this provision: "This entire policy, unless otherwise provided by agreement indorsed hereon and added hereto, shall be void if * * * there be kept, used, or allowed on the above-described premises benzine, gasoline, etc."

The evidence showed that the fire originated from gasoline which had been brought on the premises for cleaning purposes and left in a tub in the kitchen, and started from the throwing of a lighted match in the tub by the plaintiff, who supposed that it contained water. We quote the following from the opinion in that case:

"As the word 'kept' means that the prohibited article must not only be upon the premises, but must be there for keeping or storing, and not merely upon a temporary occasion for a different purpose, it follows that there must be some degree of permanency in its continuance there. The word implies all this. The word 'used' is employed in immediate connection with 'kept,' in order, we think, to extend the provision so as to exclude the idea that the article must be stored or deposited on the premises. But the purpose in the use of each word is to provide against the same danger, viz., that which would arise from the habitual, constant, or *continued exposure of the property through* the presence or use of the article. * * *

"In Mears v. Insurance Co. [92 Pa. 15, 37 Am. Rep. 647], supra, Chief Justice Paxson, said: 'We are not disposed to give to the word "use," in this policy, the narrow construction claimed for it. It must have a reasonable interpretation,—such as was probably contemplated by the parties at the time the contract

was entered into. Nearly every policy of insurance issued at the present time contains this condition, or a similar one. What is intended to be prohibited is the habitual use of such articles, not their exceptional use upon some emergency. The strict rule claimed by the defendants would prevent the assured from painting his house or cleaning his furniture, as it would be difficult to do either without using some of the prohibited articles.' "

To the same effect are the following authorities: 26 Corpus Juris, p. 222; Bouchard v. Dirigo Mutual Fire Ins. Co., 113 Me. 17, 92 A. 899, L. R. A. 1915D, 187; Firemen's Ins. Co. v. Rye, 160 Ark. 212, 254 S. W. 465; O'Donnell v. New Amsterdam Casualty Co., 50 R. I. 269, 146 A. 410, 412; Commercial Union Assurance Co. of London v. Hill, 167 S. W. 1095, 1096. The latter case was a decision by the Court of Civil Appeals at Dallas (writ of error denied), and the policy contained this provision: " 'It is warranted by the insured that the automobile hereby insured during the term of this policy shall not be used for carrying passengers for compensation, and that it shall not be rented or leased.' 'In the event of violation of any warranty hereunder, this policy shall immediately become null and void.' "

In passing on that provision the court said: "The evidence shows that, on two or three afternoons during the Fair in Dallas, Tom Hill, appellee's son, used the car without appellee's knowledge for carrying passengers for hire to and from the fair grounds.

"It is urged by appellant that such use of the car violated the provisions of the policy and therefore annulled it. We do not believe the use of the car for the limited time it was used breached the warranty clause in reference to the use of the car for hire, etc. The words, 'that the automobile hereby insured during the term of this policy shall not be used for carrying passengers for compensation,' etc., were intended to mean that the automobile should not be continuously used for that purpose for any length of time, or, in other words, the owner should not make a business of using said automobile for carrying passengers for hire, and it was evidently never contemplated that the casual use of it as made in this instance would work a forfeiture of the policy." (Citing cases.)

We believe that the stipulations in the policies involved in those cases distinguish them from the present suit, in that some of them were provisions for forfeiture of the policies and in others were, in effect, warranties against certain uses.

We have reached the conclusion that the stipulation invoked by the defendant in this case cannot be construed as coming within either of those classes. Nor do we believe that the inclusion of the stipulation in controversy under the heading of "General Conditions" or the inhibited use for rental for "one time" only, indicates an intention that the term "used" in the provision relied on by the defendant should mean an habitual or continued use and thus modify language which is in no sense ambiguous, and which, in our opinion, shows that the risk there indicated was excepted from the contract of insurance which preceded that stipulation.

In British America Assurance Co. v. Miller, 91 Tex. 414, 44 S. W. 60, 61, 39 L. R. A. 545, 66 Am. St. Rep. 901, Judge Miller, the assured, held a fire insurance policy covering trunks, satchels, wearing apparel, watches, jewels, etc., "while located and contained as described herein, and not elsewhere." When insured, those articles were located in the family residence in Wichita Falls, and were destroyed by fire while Judge Miller and his family were temporarily boarding in the residence of one Mr. Fraser, situated in the town of Henrietta, where Judge Miller was then holding court. As pointed out in the opinion in that case, the insured insisted that the language in question should be construed as referring to the usual and customary location of the articles insured, and decisions were cited in support of that contention. However, our Supreme Court overruled that contention, and we quote the following from the opinion: "However, in this policy, the insurance company so definitely and unequivocally expresses a contract by which it is not bound for the loss of the property when absent from the named place that there is no room for construction. The protection afforded by the policy is expressly limited to the time that the subject of insurance shall be contained in the house described, and whenever it was taken therefrom it was removed beyond the protection of the contract. Green v. Ins. Co., 91 Iowa, 615, 60 N. W. 189; Mawhinney v. Southern Ins. Co., 98 Cal. 184, 32 P. 945 [20 L. R. A. 87]; Haws v. Ins. Co., 130 Pa. 113, 15 A. 915 [18 A. 621, 2 L. R. A. 52]. The policy was not forfeited by the removal, but remained in force, and covered the property when returned to the residence in Wichita Falls; hence the rule that demands a construction which would prevent a forfeiture has no application."

Fireman's Ins. Co. v. Alonzo, 112 Tex. 283, 246 S. W. 82, was a suit on an insurance policy covering certain personal property while

situated in a certain building occupied by a transfer and storage company for storage purposes. The property so insured was removed to another building, where it was destroyed by fire. In an opinion by the Commission of Appeals it was held that the policy did not cover that loss, citing, among others, British America Assurance Co. v. Miller, 91 Tex. 414, 44 S. W. 60, 39 L. R. A. 545, 66 Am. St. Rep. 901, supra.

Matson v. Farm Buildings Ins. Co., 73 N. Y. 310, 29 Am. Rep. 149, was a suit on a fire insurance policy which contained a provision that the insurance company would not be liable for loss occasioned by the use of kerosene oil as a light in any barn or outbuilding. In the trial court judgment was recovered by the insured, which was reversed on appeal. The trial court construed the word "used" as requiring a habitual use and distinguished from use on a single occasion. In overruling that contention the court said: "We cannot concur in this construction. In the nature of things, if the use of kerosene oil occasioned the loss, the result must have been caused by such use on some particular occasion, and it would be of very little moment whether or not the oil had been habitually used previously without doing injury. It is impossible to conceive how such previous habitual use of the article could have caused the fire. If immediately after taking out the policy, kerosene oil was used, and on the very first occasion it set fire to the barn, according to the construction claimed the loss would be recoverable, because there must have been a previous habitual harmless use of the oil to entitle the insurance company to the benefit of the stipulated exemption. Such could not have been the intent of the stipulation. Its intent clearly was to exempt the company from liability for any loss occasioned by kerosene when employed as a lighting material. The essence of the contract was, that for a loss occasioned by that substance, so employed, the company should not be liable. The object of the clause was not to prohibit the use of kerosene, if the insured chose to use it at her own risk. If the agreement had been that the use of kerosene oil for lighting purposes should vitiate the policy, whether it caused a loss or not, there might be some color for the argument that the danger intended to be guarded against was that of the habitual use of the article and not its accidental use on an isolated occasion. But such is not this provision. The use of the oil was not prohibited, and would not, however habitual, have affected the policy. The point of the condition was that if it so happened that a loss was occasioned by that material being used as a light, such loss was not insured against. It was analogous to the case of a policy exempting the company from any loss occasioned by an explosion."

In Northwestern Nat. Ins. Co. v. Westmoreland, 215 S. W. 471, by the El Paso Court of Civil Appeals, it was held, as shown in the syllabus: "Under a policy of fire insurance providing that the company should not be liable for loss caused directly or indirectly by explosion of any kind, if a building fell by reason of an explosion before fire broke out, the policy was terminated by the falling of the building."

In that case it was further held that the burden was on the insured to prove that the loss did not come within that exception.

Travelers' Ins. Co. v. Harris (Tex. Com. App.) 212 S. W. 933, was a suit on a life insurance policy which contained this provision: "This insurance shall not cover * * * injuries * * * from voluntary overexertion, from voluntary exposure to unnecessary danger. * * * Nor shall this insurance cover accidents, injuries, death, * * * resulting directly or indirectly from entering or trying to enter or leave a moving conveyance using steam as a motive power, * * * or happening while being in any part thereof not provided for occupation by passengers, or while being on a railway bridge or roadbed."

The evidence tended to show that the insured came to his death while endeavoring to enter a moving passenger train and while on a railway roadbed. The defendant insisted that the burden was on the plaintiff to plead and prove that the death did not fall within the terms of the exceptions set forth in the policy. In the opinion by the Commission of Appeals, which was expressly approved by the Supreme Court, this was said:

"The consideration of these questions has necessitated a very comprehensive search of the authorities, in an effort to ascertain the rule which on principle should be applied. The courts of the country are not a unit on the application of the rule governing in such cases.

"The contra holdings of the court can, however, be accounted for on the difference in the construction of the contracts by the courts. Those courts which treat the contracts as being general, and the clauses declaring what they shall not cover as 'stipulations added to the principal contract to avoid the promise of the insurer by way of defeasance or excuse,' hold that these clauses are defensive, and must be pleaded and sustained by the in-

578

surer; while the courts which construe the exception clauses as 'taking something out of the general portion of the contract, so that the promise is to perform only what remains after the part excepted is taken away,' place the burden of pleading and proof upon the assured to negative them by showing that his cause of action does not come within the exception.

"The latter construction of the contract and rule on the burden of pleading and proof is supported in the following cases: (Citing cases.)

"Cases which have been decided in other jurisdictions, announcing a different rule, will be found in notes under Starr v. Ætna Life Ins. Co., 41 Wash. 199, 83 P. 113, 4 L. R. A. (N. S.) 636. Our Courts of Civil Appeals have held contra to the rule announced in Co-operative Association [Pelican Ins. Co. v. Co-operative Ass'n, 77 Tex. 225, 13 S. W. 980], supra, in the following cases: (Citing cases.) These cases are in conflict with decisions of our Supreme Court, by which we are bound.

"In view of the decisions by our Supreme Court, and the indication made in granting the writ in this case, we are of the opinion that the burden rests upon the plaintiff to show that her cause of action does not fall within the excepting clause."

The testimony of plaintiff himself showed almost conclusively that the fire occurred as the result of the turning over of the gasoline in his car when he crossed a bridge, and that the gasoline leaked therefrom through the floor of the car onto the exhaust pipe and there became ignited; but the trial court overruled appellant's motion for an affirmative finding that at the time of the fire the automobile was being used for the carrying of an explosive and that the gasoline was not used in connection with the operation of the automobile; the court having made no specific findings on those points.

Under the authorities noted, we conclude that the court erred in finding that the word "used," employed in the stipulation in controversy, should be construed as an habitual or continuous use, and that it did not apply to the single use of the automobile; and we conclude further that the burden was on the plaintiff to allege and prove that the loss did not occur within the terms of that provision which excepted that risk from the insuring provisions of the policy.

Accordingly the judgment of the trial court is reversed, and the cause remanded.