MASSACHUSETTS BONDING & INSURANCE CO. v. DALLAS STEAM LAUNDRY & DYE WORKS et al.

No. 1476.

Court of Civil Appeals of Texas. Eastland.

June 14, 1935.

Rehearing Denied Sept. 13, 1935.

Burgess, Chrestman & Brundidge, of Dallas, for appellant.

Leachman & Gardere, of Dallas, for appellees.

LESLIE, Chief Justice.

The Dallas Steam Laundry & Dye Works instituted this suit against the Massachusetts Bonding & Insurance Company to recover pecuniary losses sustained by reason of alleged theft and embezzlement of Wade T. Reynolds, an employee of the laundry company. The defendant denied liability. The trial was before the court and jury, and upon answers to special issues, a judgment was rendered for the plaintiff for the amount sued for. The bonding company appeals. There is no regular statement of facts, but the points presented are predicated upon the bond and certain agreed stipulations. The parties will be referred to as in the trial court.

That our opinion may clearly reflect our views on the law questions, a statement of the pleadings and the nature of the cause of action will be made. The bond covering the alleged defalcations expired June 16, 1932. Reynolds left the employment of the plaintiff February 16, 1933. The defalcations, committed during the term of the bond, were discovered March 2, 1933, and notice thereof then given defendant.

Proof of loss was made and submitted to the home office of the company May 12, 1933. On May 25, 1933, the company denied liability on the ground that the bond was conditioned to reimburse plaintiff for loss from defalcations discovered within six months after the expiration of the bond, and that those reported were not so discovered.

The plaintiff sues for the losses sustained, alleging that the bond was lost; that it was conditioned to reimburse the plaintiff for losses discovered within twelve months after the expiration of the bond, instead of six months, as claimed by the defendant, but if mistaken in that, the plaintiff was nevertheless entitled to recover because the defendant had waived the provision requiring discovery of loss within six months after expiration of the bond, and was, therefore, estopped to rely on that stipulation. The defendant pleaded in full the bond which it contended was issued, and that the indemnifying clause therein provided for reimbursement for pecuniary loss sustained by the employer as a result of larceny or embezzlement on the part of the employee while in the performance of his duties *"and which shall have been committed during the life of this bond and discovered within six months after the expiration * * * thereof * * *."*

The bond was renewed from time to time. The exact form of the provision of the bond before made up, was as follows:

"Shall * * * reimburse the employer to an amount not exceeding $5,000 for such pecuniary loss as the employer shall sustain of money, securities, or other personal property belonging to the employer * * * by any acts of larceny or embezzlement on the part of the employee while in the performance of the duties of the office or position in the service of the employer as hereinbefore stated, and which shall have been committed during the life of this *bond, and discovered within six* twelve *months after the expiration or cancellation thereof, or within* six months after twelve the death, dismissal or retirement of the employee from the service of the employer prior to such cancellation."

The first special issue submitted to the jury was:

"Find from a preponderance of the evidence the number of months from the expiration date of the bond within which the bond required any loss thereunder to be discovered."

No answer was returned to this issue. The jury failed to agree on whether the capitalized words actually used in the bond were "six" or "twelve." It is the defendant's contention, by proposition two, that a finding by the jury in response to issue No. 1 was material and essential to a judgment for either the plaintiff or the defendant, and that the court erred in not so treating it and declaring a mistrial. This contention will be sustained unless, for reasons hereinafter considered, the judgment be upheld on grounds of estoppel and waiver. Clearly, if such ground of recovery is not available under the facts, the plaintiff can recover only by introducing the contract, and showing the defendant's liability under its terms.

It is evident that the basis of liability for the judgment was found by the trial court in the answers of the jury to special issues Nos. 2 to 37, inclusive, relating to the' alleged waiver and estoppel. That is, the judgment proceeds upon the assumption that the plaintiff was entitled to the same on the answers to these issues even though issue No. 1 had been answered "six months." In other words, the plaintiff would sustain the· judgment on the theory that while it is true that the defendant never had an obligation under its bond, due to the provision requiring discovery of loss within six months, still a recovery for loss not otherwise covered should be upheld because the jury, in substance, found that:

(a) On March 2, 1933, plaintiff notified defendant of its loss which was more than six months after the expiration of the bond on June 16, 1932; (b) plaintiff, in reliance on defendant's failure for about two months to deny liability after it had knowledge that the losses were not discovered within six months, incurred expense, trouble, etc., in making an audit of its books, designed to ascertain items, dates, and amounts of defalcations; (c) in response to a letter of inquiry (April 13, 1933), written by the plaintiff, stating, "It is impossible for us to get this claim properly filed within the next few days, and we want from you, in writing, your instructions as to when we must have this report in," Riley, the defendant's manager, with knowledge that the losses were not discovered within six months, wrote the plaintiff: "In answer to your inquiry, wish to advise that claim must be filed within 90 days after discovery to come within the terms of the bond. We are attaching proof of loss blank to be completed if claim is to be made." That such letter led the plaintiff to believe the losses were covered by the bond and would be paid on detailed proof, etc., that in reliance thereon expenses, etc., were incurred; (d) Slaton, an adjuster for defendant, with knowledge that the losses were not discovered within six months, requested production for inspection of the plaintiff's books, vouchers, etc.; that such request led plaintiff to believe that the discovery was not too late to be valid claims, etc., and in reliance thereon incurred expenses and trouble in producing papers, etc.; (e) the adjuster, with such knowledge of the time of the discovery of the losses, assured plaintiff that subject to proper proof of items the losses would be paid, etc.; (f) the adjuster, Slaton, with knowledge of the time of discovery, directed an audit by the plaintiff, that the plaintiff was thereby led to believe that the losses were not discovered too late to come within the coverage of the bond; that so believing, it made an audit with expense and trouble.

The defendant meets this contention with its proposition No. 1, as follows:

"The indemnifying provision of the bond that defendant shall reimburse plaintiff for such pecuniary loss as plaintiff should sustain by reason of acts of larceny or embezzlement upon the part of the employee, *'and which shall have been committed during the life of this bond and discovered within six months after the expiration or cancellation thereof'* operated to except from the coverage of the bond loss from defalcations not discovered within the six months period; and since it is admitted that the loss was not discovered within six months following the expiration date of the bond, plaintiff never had any liability under the terms of its contract, and the loss could not be brought within the terms of the contract, and a contractual relation, not otherwise existing, created solely by the acts of defendant's agent claimed to constitute a waiver and create an estoppel." (Italics ours.)

We are of the opinion that the above states a sound proposition of law, ap-

plicable to the facts of this case. Such a provision, in a fidelity bond, excepting loss from defalcation not discovered within a specified time, is valid and enforceable. Hartford Acc. & Ind. Co. v. Nciman-Marcus Co. (Tex. Com. App.) 285 S. W. 603; Chicora Bank v. United States F. & G. Co., 161 S. C. 33, 159 S. E. 454, 77 A. L. R. 857; Thompson v. American Surety Co. (C. C. A.) 42 F.(2d) 953; Ballard County Bank's Assignee v. United States F. & G. Co. 150 Ky. 236, 150 S. W. 1, Ann. Cas. 1914C, 1208; American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977; Fidelity & Casualty Co. v. Consolidated Nat. Bank (C. C. A.) 71 F. 116; California Sav. Bank v. American Surety Co. (C. C.) 82 F. 866, 869; Proctor Coal Co. v. United States F. & G. Co. (C. C.) 124 F. 424; De Jernette v. Fidelity & Casualty Co., 98 Ky. 558, 33 S. W. 828, 17 Ky. Law Rep. 1088; Mayor, etc., of City of Brunswick v. Harvey, 114 Ga. 733, 40 S. E. 754; Third Nat. Bank v. Fidelity & Deposit Co., 145 Ga. 123, 88 S. E. 584; 14 R. C. L. 1268; American Indemnity Co. v. Jagoe (Tex. Civ. App.) 73 S.W.(2d) 574. Under these authorities the plaintiff must allege and prove that the loss for which recovery was sought was due to defalcation discovered within the time specified, and no recovery can be had for misappropriations discovered subsequently thereto. Such is the law in Texas as respects all exceptions from risk assumed. American Indemnity Co. v. Jagoe, supra (error refused).

If, under the facts of the case, and the theory now under consideration, there is any liability whatever on the part of the defendant to the plaintiff, it must have been created by estoppel. That is, estoppel must be used to create contractual rights in plaintiff against the defendant, and not to protect the plaintiff in existing contractual rights.

The opinion of the Missouri Court of Appeals, in Berry v. Massachusetts Bonding & Ins. Co., 203 Mo. App. 459, 221 S. W. 748, 751 (approved by the Supreme Court, McLain v. Mercantile Trust Co., 292 Mo. 114, 237 S. W. 506), makes clear the distinction between creating a contractual right by estoppel and in protecting a contractual right from some defense which might be made to the enforcement of the right. This language was there used:

"Plaintiff, in support of this theory, cites many cases in which there was a contract existing between the plaintiff and the defendant, and wherein, although the latter had a defense, it was not permitted to assert or have the benefit thereof for the reason that it was estopped to set up the defense. *But we know of no case wherein estoppel 'alone' has been permitted to 'create' a cause of action.* A cause of action must have its foundation either in a contract or in an actionable wrong done. There is nothing in the petition or in the evidence tending to show a wrong done, or a cause of action arising ex delicto. In the case at bar the right asserted is something having no relation to a wrong and, in the very nature of things, is one that can hardly arise except through a contractual relationship. No doubt there are cases in which the facts giving a cause of action were sufficient to create an estoppel against the defendant, in any circumstances where estoppel could be made applicable; but the cause of action did not 'inhere in estoppel,' but in the actionable wrong done the plaintiff, where there was no contract relation reaching from plaintiff to defendant. *'An estoppel does not in itself give a cause of action.'* Seton v. LaFone, 19 Q. B. Div. 68, 70. *'Its purpose is to preserve rights previously acquired, and not to create new ones.'* State v. Mutual Life Ins. Co., 175 Ind. 59, 82, 93 N. E. 213, 222 (42 L. R. A. [N. S.] 256). In McLemore v. Charleston & Memphis R. Co., 111 Tenn. 639, 663, 69 S. W. 338, 344, it is said: *'Estoppel can never be invoked to establish facts,* but may only be used to *prevent parties from relying upon facts which do exist.'* " (Italics ours.)

Further, it must be kept in mind that we are not here dealing with warranties or conditions that are subject to waiver under different circumstances. We are considering an exception to liability. As said in Vance on Insurance (2d Ed.) p. 405:

"Breach of a warranty or of a condition renders the contract defeasible at the option of the insurer; but if he so elects he may waive his privilege and power to rescind by the mere expression of an intention so to do. In that event his liability under the policy continues as before. *But for an excepted loss the insurer is under no liability whatever. He, therefore, cannot by a naked waiver assume a*

*non-existent duty. Nothing less than a new agreement on consideration will suffice.* For the same reason the incontestable clause is held not to bar a defense resting upon an exception. The insurer claiming an exception is in no wise contesting the contract, but merely asking that its liability be not extended beyond the express limits of the contract." (Italics ours.)

This reflects the contention of the defendant. But we have not found a clearer expression of the law applicable than that in McCoy v. Northwestern Mutual Relief Ass'n, 92 Wis. 577, 66 N. W. 697, 699, 47 L. R. A. 681, and Ruddock v. Detroit Life Ins. Co., 209 Mich. 638, 177 N. W. 242, 248. The first is an opinion by the Supreme Court of Wisconsin and the latter by the Supreme Court of Michigan. In discussing the proposition of law under a similar state of facts, it is said in the Mc-Coy Case:

*"What is here sought is not to prevent a forfeiture, but to make a new contract; to radically change the terms of the certificate so as to cover death by suicide, when by its terms that is expressly excluded from the contract.* We do not understand that the doctrine of estoppel or waiver goes that far. After a loss accrues, an insurance company may, by its conduct, waive a forfeiture; or by some act before such loss it may induce the insured to do or not to do some act contrary to the stipulations of the policy, and thereby be estopped from setting up such violation as a forfeiture; *but such conduct, though in conflict with the terms of the contract of insurance and with the knowledge of the insured, and relied upon by him, will not have the effect to broaden out such contract so as to cover additional objects of insurance or causes of loss.* To illustrate the principle here laid down, a policy of insurance against loss by fire cannot have ingrafted upon or added to it, by way of estoppel or waiver, provisions for insurance against loss by any other cause; and no more can a policy of life insurance, expressly limited to payment of a sum of money in the event of death from causes other than suicide or self-destruction, be broadened out by the application of the law of waiver or estoppel so as to cover the cause excluded under the contract. While a forfeiture of benefits contracted for may be waived, the doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all." (Italics ours.)

Stated somewhat differently, but in substance the same, the Supreme Court of Michigan said in the Ruddock Case:

"The cases where the doctrine of waiver, or estoppel, has been applied have largely been cases where the insurance companies have relied on a foreiture of the contract, upon breaches of the warranties and conditions to work such forfeitures; and in many such cases this court and other courts of last resort have held that if the companies have led the other party, to his prejudice, to his expense, to understand that such forfeitures, such breaches of warranties and conditions, would not be insisted upon, then the companies would be estopped from asserting such defenses. *But here the defendant makes no claim of forfeiture of the contract; on the contrary, it is insisting upon the contract itself, and insisting that by its terms it did not insure the deceased when engaged in military services in time of war. To apply the doctrine of estoppel and waiver here would make this contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the defendant under the terms of the policy. In other words by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make."* (Italics ours.)

For other authorities, see Caldwell v. Illinois Bankers' Life Ass'n (Tex. Civ. App.) 226 S. W. 747; American National Ins. Co. v. Turner (Tex. Civ. App.) 226 S. W. 487; Llano Granite & Marble Co. v. Hollinger (Tex. Com. App.) 212 S. W. 151; McLemore v. Bickerstaff (Tex. Civ. App.) 179 S. W. 536; G. S. Johnson Co. v. Nevada Packard Mines Co. (D. C.) 272 F. 291, 309; Morrill Realty Corporation v. Rayon Holding Corporation, 254 N. Y. 268, 172 N. E. 494; Henry County v. Standard Oil Co., 167 Tenn. 485, 71 S. W.(2d) 683, 93 A. L. R. 1483; McLain v. Mercantile Trust Co., 292 Mo. 114, 237 S. W. 506; Vance on Insurance (2d Ed.) p. 466.

In the light of these authorities, we are of the opinion that the plaintiff is here seeking to create and establish a right

that does not exist under its contract, but which is expressly excepted or excluded therefrom. To sustain plaintiff's contention would be to extend an obligation to cover a risk that it does not cover. As we conceive it, there is no estoppel in the case as urged by the plaintiff. As often stated by the authorities and text-writers, estoppel is protective or defensive, and not an offensive weapon, and its operation should be limited to saving harmless or making whole the person in whose favor it arises, and it should not be made an instrument of gain or profit. To predicate liability upon the facts and circumstances here alleged to constitute waiver and estoppel would, it seems to us, render it perilous for one charged with liability to make any character of investigation or communication concerning the same.

Further, it is to be noted in this connection, that in the plaintiff's pleadings it is nowhere alleged that but for the representations and statements made by the defendant's agent that the insured (plaintiff) would not have had an audit made to determine the amount of defalcations of the employee. It did plead in the alternative that the policy covered loss discovered within a year after the termination of the policy, etc. Presumably, it would in any event have had an audit made to determine the amount of such loss under the 12 months' provision of the policy.

For the above reasons, and upon the authorities cited, we sustain each of the defendant's propositions. The plaintiff has cited several authorities by which it undertakes to sustain the judgment upon the theory of estoppel. We have carefully studied each of these authorities and reached the conclusion that they are not applicable to the facts of this case. We believe that the defendant's analysis of these authorities is sound. In the first class of cases so relied on, the facts claimed to constitute estoppel occurred prior to the inception of the contract and operated to prevent the insurer from denying the contract actually made, although

not expressed in writing. Typical of such cases is Barker v. Travelers' Ins. Co. (Tex. Civ. App.) 52 S.W.(2d) 285. The second class of cases are those having to do with the modification of the written contract by an agent, who, upon proper information or notice, agreed that the policy should cover loss in a new or different location. See United States F. & G. Co. v. Taylor (Tex. Civ. App.) 11 S. W. (2d) 340; Delaware Ins. Co. v. Wallace (Tex. Civ. App.) 160 S. W. 1130. The third class of cases relied on deals with liability insurance policies in which the insurance company, by entering into the defense for the assured, assuming absolute control and responsibility for the litigation, in effect, made itself a party to and became bound by the judgment rendered against the assured. The insured in such cases became bound upon a principle of judicial estoppel. See American Ind. Co. v. Fellbaum, 114 Tex. 127, 263 S. W. 908, 37 A. L. R. 633; Empire State Surety Co. v. Pacific Nat. Lumber Co. (C. C. A.) 200 F. 224; Patterson v. Adan, 119 Minn. 308, 138 N. W. 281, 48 L. R. A. (N. S.) 184.

It follows that the judgment of the trial court is reversed and the cause remanded. It is so ordered.

### On Motion for Rehearing.

The motion of the appellee Dallas Steam Laundry & Dye Works coming on for hearing and the same having been considered by the court, it is ordered that the same be granted to the extent that the original judgment of this court reversing the judgment of the trial court as to Wade Reynolds be, and the same is hereby, withdrawn, and it is now the order of this court that the judgment of the trial court against the said Reynolds in favor of the Dallas Steam Laundry & Dye Works be, and the same is, in all things affirmed. In all other respects the judgment of this court heretofore entered in this cause remains undisturbed, and the motion in this latter respect is overruled.

It is so ordered.