PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA V. SUSAN R. METZGER.

No. 7546. Decided October 30, 1940.
Rehearing overruled November 27, 1940.
(143 S. W., 2d Series, 934.)

446

*Andrews, Kelley, Kurth & Campbell, W. M. Streetman* and *John E. Cook,* all of Houston, for plaintiff in error.

A mere expression of an opinion by an agent of an insurance company to plaintiff that if she would bring a suit in garnishment, against said company for proceeds of a policy due a policy holder who was indebted to plaintiff, she would get her money, does not constitute an offer to a contract, and defendant's motion for judgment non obstante veredicto in the trial court should have been granted. Todd v. Victory, 277 S. W. 705; Hill v. Kelsey, 89 S. W. (2d) 1017; Graham Paper Co. v. Williams, 175 S. W. 803.

*Ernest A. Knipp,* of Houston, for defendant in error.

The insurance company having represented to plaintiff that it was indebted to Petiot for an amount in excess of her claim against him, and that it expected to pay him such sum of money, and that if she did file suit against him and have garnish-

ment issued against the insurance company, she would get her money, and plaintiff having complied with such representation and filed suit, the company is bound to pay her the amount of her debt, as such facts, representations and conduct on the part of the parties constituted a contract, binding on the insurance company. Texas & N. O. Ry. Co. v. New, 95 S. W. (2d) 170; Employers Casualty Co. v. Ponton, 41 S. W. (2d) 147; Farmers State Bank & Trust Co. v. Gorman Home Refinery Co., 273 S. W. 694.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The manner in which this case arose, together with a portion of its background, is stated in the opinion of the Court of Civil Appeals (124 S. W. (2d) 417), which see. That statement will not be repeated here and will not be added to except as may be deemed helpful in discussing the questions involved.

The pleadings of Susan Metzger, defendant in error here, and the issues submitted to the jury, disclose that the suit is predicated, in final analysis, upon an alleged promise, or inducement, by Pacific Mutual Life Insurance Company (acting through its agent, Edgar Harold) to pay to her a sum of money to bring a garnishment suit in connection with her claim against Marc Petiot.

The trial court, upon the jury's finding that the company promised to pay her and induced her to believe it would pay her, the amount of the debt which Petiot owed her, rendered judgment in her favor against the company for $1694.00 and interest. The Court of Civil Appeals affirmed the judgment. 124 S. W. (2d) 417.

Writ of error was granted upon the company's application on the ground, substantially, that the record is barren of evidence of such promise or inducement, other than Harold's statement that if she, or her brother, B. V. Metzger, or her sister Margaret, would file garnishment proceedings against the company they "would get their money"; and that such statement is not legally sufficient to support the contract pleaded.

The Court of Civil Appeals states in its opinion that if "Harold's statement to the effect that 'if you file a writ of garnishment you will get your money,' constituted the whole transaction between the parties," no contract between Susan Metzger and the company resulted; but that "viewing the *circumstances* and *conversations as a whole* we think a contract did result." (Italics ours.)

■ We are in accord with the view that Harold's statement is not legally sufficient to base a contract upon, but we are not in accord with the holding that the conversations and circumstances which will be later discussed, viewed as a whole, are legally sufficient to show a contract between the company and Susan Metzger. We find no circumstances which, considered in the light of the conversations between the parties, tend to convert the language of the company's agent into a promise on the company's part to pay to Susan Metzger a stipulated sum upon consideration that she file a garnishment proceeding against it.

The following are the conversations, substantially, not only between Harold and Susan Metzger, but also between Harold and her brother, B. V. Metzger, and between Harold and her sister Margaret.

Margaret Metzger (who is not a party to this suit, and who did not file a garnishment proceeding), in testifying concerning an assignment from Petiot to her of an interest in an oil well, said that Harold, after looking at the assignment, turned to Susan and said, "Why, you are not mentioned in this (the assignment contract) at all. Why don't you garnishee this?" She stated that he told her (Margaret) to hold on to that contract, "because we (the company) have got to make a settlement with Petiot sometime and as long as this old policy (insurance policy) is held by him, he can lie down anywhere and get a doctor to say that he is sick and we will have a law suit over it. You can never tell what."

The foregoing conversation occurred, according to Margaret Metzger's testimony, early in 1924, which was prior to the filing of the garnishment suit by her sister Susan in July of the same year.

Margaret Metzger testified also that in a prior conversation when she first saw Harold, he said to her, "Now, Miss Metzger, if you (Margaret) will tell me what you know, you will get more than if you don't."

B. V. Metzger, brother of Susan and Margaret, filed a garnishment proceeding against the company and subsequently joined his sister Susan in this action, which is a direct action against the company. A general demurrer was sustained by the trial court to the joint action, but B. V. Metzger did not appeal. 30 S. W. (2d) 428. He testified concerning the above conversation with Harold to substantially the same effect as his sister Margaret. The portion of his testimony relied upon by Susan Metzger in the present suit reads: He (Harold) said:

" 'Why don't you (Susan) go and why don't you garnishee Petiot's insurance?' "She says 'I didn't know I could.' 'Why, certainly, you can,' he says, 'you go right down to Judge Atkinson,' he knowing he was our attorney at that time, 'you go right down to Judge Atkinson and have him garnishee his (Petiot's) insurance, and you will get your money.' Well, then, I spoke up about that time, and I said, 'How about me?' 'Well,' he says, 'What does he owe you?' and 'Well, I said, 'about $2,700.' 'Well,' he says, 'you do the same, you go with your sister, and you both go down and have Judge Atkinson garnishee his insurance, and you will get your money.' "He emphasized it, he made it impressive, that we would get our money if we did that. The result was that we did (he and Susan) and then had to put up a heavy bond, and that expense, and we were on an extra strain there, but he made it impressive that we would get our money."

Susan Metzger, the only one of the Metzgers who is a party here, testified as follows:

"He (Harold) knew Judge Atkinson was our attorney and he said 'You go right down and see Judge Atkinson in the morning and have him garnishee your insurance, and you will get your money,' and he claimed that he would like to see us get something and get it instead of Petiot." * * *

"So my brother, he spoke up and said, 'What about me?' And he (Harold) said, 'How much does he (Petiot) owe you?' And he (B. V. Metzger) says, 'He owes me about $2700.' And he (Harold) said, 'Well you can do the same thing.' He said, 'You both go down to Judge Atkinson in the morning and have him garnishee Petiot's insurance, and *you will get your money,*' so he asked me if I had this note for $1100 (note against Petiot). * * *

"That night he called up before he went away and said, 'Miss Metzger, that is a perfectly good, bona fide note,' and he said, 'Did you see Judge Atkinson?' and I said, 'Yes, we saw him this morning, and he is going ahead and garnishee Petiot's insurance.' He said 'Good now,' he says, 'You go ahead, both of you, and do that, and *you will get your money.*' " (Italics ours). * * *

"Well, I don't know that that is the words: they are the sum and substance of it. If we would do this, we would get our money because they had to buy this policy back. That was the thing: They must have this policy. It was not that they expected, I don't think, to pay $500 a month but they wanted to buy this policy." * * * "Well, I don't know it was just in those words; what he said was, if we would do this, if we

would sue out these garnishments that we would receive our money, because they must settle with him, that he wanted $10,000, but that they were not going to give him that much, and he knew how much mine was, and how much my brother's was and it amounted to around $4,000. * * * Well, the sum and substance, they had to pay Petiot for this policy and we would get our money out of that."

A letter written in January, 1925, by Susan Metzger to Harold subsequent to the filing of the garnishment (July, 1924) is relied upon by her as tending to show a promise. In this letter she said, among other things: "The last time you were here, you asked us to help you all we could and you would do the same for us."

The foregoing testimony is gleaned from the record, discarding all that is adverse, and including all most favorable, to Susan Metzger's contention. It includes not only the quotations from the record set out in the application for the writ claimed to be the statements most nearly supporting the contract theory of the case but legally insufficient, but also all statements pointed out in Susan Metzger's brief as tending to support such theory.

A consideration of the testimony discloses that it contains no language constituting a promise. The statements of the conversations relied upon, whether considered separately or as a whole, do not tend to show an undertaking, or agreement, to pay a sum of money for the filing of a garnishment suit. Nor do they state as a fact, or tend to show a guarantee by the company that Susan Metzger will be paid a stipulated sum or any sum for filing a garnishment suit. Taken together or separately the conversations indicate at most against the company the opinion of its agent that the Metzgers, if they filed garnishment proceedings, would get their money by means of an adjudication in such proceedings that the company was indebted to Petiot on the policy. It is undisputed that the company was at all times, after Petiot filed suit against it, denying liability on the policy. The conversations fall far short of creating an *unconditional obligation* on the part of the company to pay Metzgers, or any of them, Petiot's indebtedness to them.

Nor do we find any circumstances in the record tending, in conjunction with the conversations and correspondence between the parties, to show that a contract resulted. One of the circumstances viewed by the Court of Civil Appeals tending to so show, is the fact that the company was desirous of settling by compromise, or defeating, Petiot's claim against it. Reference

is made in the opinion in this connection to a statement in Harold's letter of November 25, 1925, to defendant in error. That letter, together with the letter of Susan Metzger to which it was a reply, will be set out in full. Susan's letter to Harold bears date November 20, 1925, and is directed to his Chicago address. Pieced together from the cross examination in which it appears it reads:

"I am writing you personally to see if you will tell me how the Petiot case stands. I understand it was placed on the docket here for trial the last of this month, but you know what infernal liars this bunch are.

I heard this morning she has a brand new car and was rumored the insurance company was settling with Petiot direct.

I believe you are a friend and would like to see justice done; and all they would give me was $750.00 and give Atkinson the fourth of that. Woods told Atkinson that was their limit. I told them $1000 clear for myself was the least I would take and told Atkinson he could collect his 10% atty. fee the note called for, besides that. I guess they are trying to do me and tire me out.

They do not recognize my brother's claim. It would have to be a lawsuit and P. would not come here for that, so they want me to have only a pittance and they have everything they want on our money. She dresses like a millionaire.

I am so sorry you are not in this district any more; but if you come to Houston at all wish you would at least call us up. We have moved 8 blocks out Anita from where we were, and now live 3008 Caroline, only 3 blocks from Main St. out on the other side of Main from where we did live.

Hoping you will answer this letter and tell me where this matter stands.

Remember me to Mrs. Harold."

Harold's reply reads:

"I have just received your letter and am very glad to have heard from you.

The company has made no settlement with Petiot. If we should take any action toward that end it would be through his attorney, Mr. Wood in Houston. The present indications are, however, that we will not make any settlement as our case has recently been very materially strengthened.

Thanking you for having written me and with kind remembrance to your sister, I am," etc.

The letters (both written after the garnishment was filed, it will be noted) contain no statement tending to show the

claimed agreement, or that Susan Metzger believed the company was *legally obligated to pay her anything*.

The record contains all of the correspondence between the Metzger sisters and Harold. The letters, written intermittently, are not numerous, and cover a period from October 9, 1923, to January 19, 1926. They link together but contain no statement tending to show a promise to pay, or contract to do so, on the company's part. They are barren of language importing a legal obligation.

The remaining circumstance referred to in the court's opinion as supporting the contract theory, is that relating to the failure of Harold's consel to produce in court the correspondence (if any) between him and the company "at the time of the transactions."

The occurrence referred to is reflected in the following excerpt in which it set out the cross examination of Harold in connection with his denial that any agreement was made with the Metzgers:

Q. Well, are you testifying from your recollection of what occurred, or from the review of the notes that you made?

A. From my recollection, and I have had occasion from time to time to refresh my recollection by reference to the files and to accounts that I had made to the company of my trip.

Q. Do you have a copy of that policy here?

A. No, I have not.

Q. What records in connection with the issuance of the policy have you got?

A. We have the original application; I don't know whether we have that here, or whether that is at the home office. An insurance company, at least the Pacific Mutual Life Insurance Company of California, did not and does not retain copies of the policies it issues; it retains the application and a record that identifies that policy and the form, and any riders or supplements, or all of those things.

Q. What I meant by a copy was the form. They use printed forms, I presume?

A. Yes.

Q. You didn't bring that?

A. No, I haven't one with me.

Q. Did Mr. Streetman inform you that I had requested that you bring that, or any other records that you had?

A. No, I think that all of—

Q. Just didn't tell you anything about this demand being made in the pleading at all?

A. When was this pleading filed?

Q. I don't know. Two or three weeks ago. This last one was filed June 17, two weeks ago.

A. Well, I left Los Angles on June 18, and haven't been back there since.

Q. * * * I presume he asked you to come here?

A. Yes.

No inference can be deduced from the occurrence reflected in the foregoing excerpt that would strengthen defendant in error's contention that Harold promised payment for the filing of a garnishment proceeding. Furthermore the Metzgers do not contend that the "transactions" between them and Harold are not fully set forth in their correspondence and conversations with him.

■ It is apparent from what has been stated that we hold the Court of Civil Appeals erred in holding that there is any evidence to support a finding that the company, acting through Harold, promised Susan Metzger that if she would bring the garnishment suit against the company, it would pay her the amount of the debt Petiot owed her.

The Court of Civil Appeals also held that regardless of whether an enforceable contract in favor of Susan Metzger resulted from the conversations and transactions between Edgar Harold and the Metzgers; the company was "nevertheless liable on the principle of estoppel."

Defendant in error in the concluding paragraph of her amended petition upon which the case was tried pleads in the alternative that "if, for any reason, it should be found or determined by the court that the facts hereinbefore alleged *are insufficient to constitute a valid and binding express contract* * * *, then the facts as *hereinbefore set out* are such as to completely estop" the company from denying that it was indebted to Petiot, and "that a *contract in law arises by estoppel,*" so that the company is *bound and obligated* to her for the amount of her judgment against Petiot in the sum of $1694.00. (Italics ours.)

It is apparent from the issues submitted to the jury that the case was not tried upon the theory of estoppel on the part of the company to deny its indebtedness to Petiot, or upon any other estoppel theory. See issues set out in the opinion of the Court of Civil Appeals. 124 S. W. (2d) 418. The only issue submitted, other than the issue just discussed, and those inquiring concerning Harold's authority, is the issue inquiring whether Harold *induced Susan Metzger to believe the company would*

*pay her the amount of her claim against Petiot* if she would bring the garnishment suit which she did bring.

■ Obviously the affirmative answer to this issue can form no basis for the trial court's judgment. Furthermore the only facts offered in evidence are those not legally sufficient to constitute a promise by the company to pay a stipulated sum for the filing of a garnishment suit. These same facts cannot by estoppel create in behalf of defendant in error a right to assert that she is entitled to payment by the company of Petiot's debt to her merely because of a belief she deduced therefrom that the company had so promised. The facts do not legally justify such belief, as we have just shown.

We hold it appears from the record that the transactions between defendant in error and the company through its agent Harold, as above set forth, do not give rise to the claimed legal obligation to her on the part of the company, either by contract or by estoppel. See in this connection Massachusetts Bonding & Insurance Company v. Dallas Steam Laundry & Dye Works (wr. ref.), 85 S. W. (2d) 937.

The judgment of the Court of Civil Appeals affirming that of the trial court is reversed and judgment is here rendered that defendant in error take nothing.

Opinion adopted by the Supreme Court October 30, 1940.

Rehearing overruled November 27, 1940.